C. G. SHEPARD, Appellant, v. J. R. BREWER.

Division One, February 28, 1913.

1. SLANDER: Words Slanderous Per Se: Explanation: Secret Intent: Abuse. To say of another, "He is a thief," and to charge in unequivocal language that he is a keeper of a rendezvous for thieves, is to use words that are actionable *per se*, and the law presumes malice on the part of him who utters them; and testimony to show that he had a secret or reserved intent not to charge the person concerning whom they were uttered with larceny, is inadmissible. Defendant cannot be permitted to explain them by testifying that by using them he only meant to abuse plaintiff for annoying him by frequent and frivolous lawsuits. The intention of the speaker is material, to be inquired into, only when the words have a doubtful, ambiguous or hidden meaning.

2. ———: ———: ———: ———: Instructions. And the testimony being inadmissible and incompetent, instructions basing a defense upon it are erroneous.

3. **OBJECTION TO TESTIMONY: As Usurping Province of Jury: Rebuke by Court.** Counsel have the right to object that certain testimony is an invasion upon the province of the jury to find the ultimate fact; and if it is clearly inadmissible for that reason, and the objection is made in respectful language and in a decorous manner, it is erroneous and prejudicial for the court to severely reprimand and threaten counsel for making the objection, as a public criticism of the court's conduct.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*S. J. Corbett* for appellant.

(1) To charge that a person is a thief is actionable *per se*, and malice is presumed on the utterance of the slanderous words. Carpenter v. Hamilton, 185 Mo. 603; Hall v. Jennings, 87 Mo. App. 627; Lewis v. McDaniel, 82 Mo. 577; Baldwin v. Fries, 46 Mo. App. 288; Buckley v. Knapp, 48 Mo. 152; Callahan v. Ingram, 122 Mo. 355. (2) The court erred in permitting the defendant to testify as to the meaning he meant to convey by the words used, and in permitting other witnesses to testify as to what they understood to be the meaning of the words used. Snell v. Snow, 13 Met. (Mass.) 278; Gilber v. Press Co., 37 Minn. 277; Callahan v. Ingram, 122 Mo. 355. Evidence of the motive or intent of the defendant in speaking the defamatory words is inadmissible. Buckstaff v. Hicks, 94 Wis. 34; Shipp v. Story, 68 Ga. 47; Rearick v. Wilcox, 81 Ill. 77. (3) The fifth instruction given at the request of the defendant is clearly error, and directly in the face of every holding on a similar state of facts of the appellate courts of this State, as well as of every State in the Union. The evidence plainly shows that the defendant on numerous occasions had said plaintiff was a thief, yet on most every occasion there was some other word used in connection with the word thief, which we would not care to place in print. And

the defendant himself was permitted to testify that he did not intend to call the plaintiff a thief; but that he only meant them as words of abuse; then the court instructed the jury that if they believed they were words of abuse the plaintiff could not recover.  Under the theory on which the court tried this case, this instruction was tantamount to a peremptory instruction to find for the defendant.  Israel v. Israel, 109 Mo. App. 396; Sheffiell v. Van Dusen, 15 Gray (Mass.), 485;  Quinby v. Tribune Co., 38 Minn. 528; Battell v. Wallace, 30 Fed. 229; Hosley v. Brooks, 20 Ill. 115; Mousler v. Harding, 33 Ind. 176; Poissenet v. Cruce, 81 S. W. 380; Lodgewood v. Elliot, 51 S. W. 872.  (4) The language of the court in the presence of the jury was highly prejudicial, wholly uncalled for, and could have no other effect than to prejudice the jury against the plaintiff and his counsel.

*E. E. Reeves* and *J. J. Russell* for respondent.

WOODSON, P. J.—The plaintiff instituted this suit in the circuit court of Pemiscot county against the defendant to recover the sum of $5000 actual and $10,000 as punitive damages upon each of the four counts of the petition, alleged to have been sustained by him through and by virtue of certain slanderous and derogatory words spoken of and concerning him by the defendant.

**Slander.**

A trial was had before the court and jury, which resulted in a verdict and judgment for the defendant, and after taking the proper preliminary steps the plaintiff appealed the cause to this court.

The petition filed was in the following language:

"1.  Plaintiff for his cause of action states that defendant wilfully, wantonly and maliciously spoke of and concerning plaintiff certain false, defamatory and slanderous words, to-wit:

**Petition.**

" 'He is a thief'—meaning this plaintiff—which words were spoken of and concerning this plaintiff in the presence of others and which words were spoken in the city of Caruthersville, county of Pemiscot, and State of Missouri, between the 15th day of November, 1905, and the 1st day of January, 1906.

"Whereby plaintiff has been greatly injured in his good name and fame, to his damage in the sum of five thousand dollars, for which he prays judgment. Plaintiff prays judgment in the sum of ten thousand dollars, as exemplary or punitive damages.

"2.    Plaintiff for another, further and separate cause of action and for a second count in his petition against defendant, says that defendant wilfully, wantonly and maliciously spoke of and concerning the plaintiff certain false, defamatory and slanderous words, to-wit:

" 'He is a perjurer'—meaning this plaintiff— which words were spoken of and concerning this plaintiff in the presence of others, and which words were spoken in the city of Caruthersville, county of Pemiscot, State of Missouri, between the 15th day of November, 1905, and the 1st day of January, 1906.

"Whereby plaintiff has been greatly injured in his good name and fame, to his damage in the sum of five thousand dollars, for which he prays judgment. Plaintiff says said words were maliciously spoken, and plaintiff prays damage in the sum of ten thousand dollars as exemplary or punitive damages.

"3.    Plaintiff for another, further and separate cause of action, and for a third count in his petition against defendant, says the defendant, on or about the first of February, 1906, had a conversation with one J. W. Bader of and concerning a lawsuit which had been filed in the Pemiscot County Circuit Court, styled J. H. & T. Cole Powell v. L. B. Powell et al., in which said suit this plaintiff and S. J. Corbett were attorneys for the plaintiff, and that in and during the

said conversation between the said J. W. Bader and the defendant herein, the defendant wilfully, wantonly and maliciously spoke of and concerning the plaintiff certain false, defamatory and slanderous words, to-wit: 'You are among a den of thieves up there,' meaning thereby to call this plaintiff's office a thieves' den, and to call this plaintiff a thief, which words were spoken of and concerning this plaintiff in the presence of and to the said J. W. Bader.

"Whereby plaintiff has been greatly injured in his good name and fame, to his damage in the sum of five thousand dollars, for which he prays judgment. Plaintiff says that said words were maliciously spoken, and plaintiff prays judgment in the sum of ten thousand dollars as exemplary or punitive damages.

"4. Plaintiff for another, further and separate cause of action, and for a fourth count in his petition against defendant, says that defendant, at various times and places in the city of Caruthersville, and in the presence of numerous parties, in conversations with others concerning plaintiff, wilfully, wantonly, falsely and maliciously spoke of and concerning the plaintiff certain false, defamatory and slanderous words, to-wit: 'He'—meaning plaintiff—'will go to the books when a case is brought to him, or when he is consulted about a case, and find out what evidence it will take to win the case and then tell the party interested the evidence he will have to procure in order to win the ease,' and that this plaintiff would lay the plans, and that Sam J. Corbett and others with whom he worked would falsely procure testimony to win cases, thereby meaning to say that this plaintiff had been guilty of subornation of perjury, which words were spoken between the 15th day of November, 1905, and the 1st day of February, 1906.

"Whereby plaintiff has been greatly injured in his good name and fame, to his damage in the sum of five thousand dollars, for which he prays judgment. Plain-

tiff says said words were falsely and maliciously spoken, and prays exemplary or punitive damages in the sum of ten thousand dollars.''

The answer was as follows:

'Now comes the defendant, by leave of court first obtained, and for his answer to plaintiff's petition, and

**Answer.** to each and every count therein contained denies each and every allegation contained in the several counts of said petition and prays judgment for costs.

''Further answering, the defendant admits that he may have used some abusive language to one J. W. Bader, but denies that he used the language as charged in the third count of plaintiff's petition, and whatever language he did use, was simply language of abuse and not intended by the defendant to charge the plaintiff or anyone else of being a thief or guilty of the crime of larceny. The defendant says that whatever defendant may have said in the way of abuse of and concerning plaintiff was provoked by the wilful and malicious treatment by the plaintiff of the defendant, by charging him with various wrongs, and by persisting in harassing him with frivolous and vexatious litigation, and defendant again asks judgment for costs.''

Either at the beginning of the trial, or at the conclusion of the introduction of the evidence, which is not clearly shown by the record, the plaintiff dismissed the cause as to the second and fourth counts in the petition.

The evidence for the plaintiff tended to support the allegations of the petition as stated in the first and third counts thereof, and in fact, if I correctly understand the record, the defendant not being represented here, it was scarcely denied that defendant used the language complained of in said counts, but seeks to escape the effect thereof by the pleadings and proof, that he did not mean thereby to charge plaintiff with

larceny or perjury or subornation of perjury, but used said language as justifiable abuse only.

That justification consisted of the following testimony of the defendant, James R. Brewer, which was admitted over the objection of the plaintiff, viz.:

J. R. Brewer testified on behalf of the defendant:

**Testimony.** "Q. I will ask you what Shepard's treatment of you has been during the last twelve months?

"Mr. Shepard: We object to that as being irrelevant, immaterial and incompetent, and it does not tend to prove any of the issues in this case. I am not charged with mistreating Brewer.

"Court: Court will let him answer. Exception noted.

"A. Mr. Shepard and Sam Corbett have been on me like two fices on a big dog for the past two years. They have been bringing what I consider frivolous lawsuits.

"Q. How many suits has Mr. Shepard brought or instituted against you over land? A. Acting as the attorney of J. H. and T. Cole Powell he brought a suit against me, J. J. Williams and L. B. Powell. That suit was on change of venue carried to Dunklin county. It was tried there and appeal was granted; then he filed the suit of J. W. Bader, T. Cole Powell and J. H. Powell against me, Dr. J. J. Williams and L. B. Powell, in which he seeks to set aside a deed made by a trustee under deed of trust for some land in 11, 17, 12. Previous to the filing of this lawsuit in which he seeks to set aside the deed, I was always very friendly to Mr. Shepard until that time. And when this suit was filed I lost my patience. It is true I did not have a good feeling toward him after he filed the first lawsuit. Mr. Shepard was a lawyer in the suit that was tried over in Dunklin county, and my best impression is that he was present at the time a motion for a new trial was made, and I don't remember whether he was present at

the time the motion was acted upon. My best remembrance is he was. The appeal was granted in this case on November 15, 1905. Then Mr. Bader files the lawsuit in this court of J. W. Bader, T. Cole Powell, John H. Powell v. L. B. Powell, J. R. Brewer and J. J. Williams. In that petition he bases the right of the plaintiffs therein T. Cole Powell and J. H. Powell—

"Mr. Corbett: We object to the matters in that petition—it will speak for itself.

"Court: Yes, sir; the petition will speak for itself."

Further on witness Brewer said that after he saw the petition and knew that Mr. Shepard had information that an appeal had been taken he concluded it was a matter of persecution on the part of Mr. Shepard, and to the best of his memory he stated to Bader, *"You are among a set of thieving sons of bitches."*

"Q. Let me ask you in this connection whether you had any intention at the time of charging Mr. Shepard with being guilty of larceny?

*Intention.*

"Corbett: Object to that question for the reason it is an inference to be drawn by the jury from the words that he said.

"Court: Court will let him answer.

"Mr. Corbett: Note our exceptions.

"A. It looks this way—

"Mr. Corbett: Object to that for the further reason that it permits the witness to take the province of the jury, as it is the jury's province.

"Court: The court is trying this case. We cannot permit you to criticise its conduct publicly; the court will grant you the right to except to its action; but if you make further reference to the action of the court the court will fine you for contempt. You have the right and the court will grant you ample time to make an objection, but for an attorney to criticise the court publicly for its

*Rebuke of Counsel.*

action, that is an act of contempt which we will undertake to punish you for; this is the second time you have undertaken to criticise our conduct; we will not permit you to do that. You may talk on the outside; but when you come into court, we propose to exercise our authority.''

L. L. Collins testified on behalf of the defendant that he was present in the office at the time Mr. Brewer had the conversation with Mr. Bader as mentioned in the evidence; that the conversation grew out of a talk between Bader and Brewer relative to the lawsuit being brought against Mr. Brewer and that in that conversation Mr. Brewer used about the words mentioned by Mr. Bader. On cross-examination he was asked:

''Q. He was in your office, you say, after the suit was tried over in Dunklin county? A. I did.

''Q. You heard him have numerous conversations in this office soon after that suit was tried in regard to me and Mr. Corbett, and others? A. Yes, sir; I heard him say something about you and Mr. Corbett. He came back mad; but what he said about either of you I would not undertake at all to tell.

''Q. I will ask you if he did not go to Kentucky and come back again? A. Well, he has been living in Kentucky for something like now two years, and he come back and forth every court, and always made our office his headquarters, doing his work, preparing his papers.

''Q. I will ask you if he did not have some conversation in your office after he came back to Kentucky? A. I have heard him several times make remarks about you.

''Q. I will ask you if these remarks were not made most every time my name was mentioned or anything in regard to that suit was mentioned from the time it was tried clear on up until now? A. Well, I have heard him make several remarks about you to me in the office; but just what they were I wouldn't undertake to tell.

"Q. In reality Brewer has not cooled off from the time of that as far as I am concerned? A. From the way he talks he is not friendly to you."

There was other evidence of similar import introduced, but this is sufficient to indicate the legal questions presented by counsel along that line.

At the request of the defendant, and over the objections of the plaintiff, the court gave the following instruction, viz:

"5. The court instructs the jury that, although you may believe and find from the evidence in this case **Instructions.** that previous to the institution of this suit defendant uttered the words charged in the petition, yet if you further find and believe from the evidence that said words were mere words of abuse, and that defendant did not intend thereby to charge the plaintiff of the crime of larceny, then in such case the plaintiff cannot recover, and your finding should be for the defendant."

Any other facts which may be necessary for a proper consideration of the legal questions involved will be noted and considered in the opinion.

Upon this state of the record, the plaintiff below, the appellant here, assigns the following errors:

"1. The court erred in admitting irrelevant, immaterial and incompetent evidence on the part of the defendant.

"2. The court erred in refusing relevant and **Assignments.** competent testimony offered by plaintiff at the trial of this cause.

"3. The court erred in permitting counsel for the defendant to use in his argument before the jury the language complained of in plaintiff's motion for a new trial.

"4.  The court erred in giving instructions numbered 1, 2, 3, 4, and 5, at the request of defendant.

"5.  The verdict and the judgment are against the law and the evidence, and against the law under the evidence.

"6.  The verdict of the jury was on the first and second counts in plaintiff's petition, there being no finding on the third count.

"7.  The jury failed to make any finding on the third count of plaintiff's petition.

"8.  There is no judgment on the third count in plaintiff's petition.

"9.  The court erred in the uncalled for rebuke of plaintiff's counsel in this cause before the jury, during the progress of the trial.

I.  The errors assigned may be resolved into three propositions; first, that the circuit court erred in the admission of evidence; second, that it erred in giving instruction numbered five; and third, that the strictures passed upon counsel for appellant, during the trial by the court, were uncalled for and prejudicial to the rights of appellant.

We will consider those propositions in the order stated, but in passing, it might be well to state that the two former are so closely related that Intended Meaning. what is said of the one will necessarily and largely apply to the other.

Attending the first:  It is insisted by counsel for the appellant that the court erred in permitting respondent to testify as to what he meant by the use of

the language, to the effect he, the plaintiff, is a thief and that the plaintiff's office is a thief's den.

It is the contention of counsel for appellant that the ordinary and plain meaning of that language used was to accuse the appellant of being a thief, and that his office, with his knowledge and consent, was the rendezvous of thieves and dishonest persons, which cannot be contradicted by parol evidence.

Counsel for respondent, upon the other hand, insist that he did not intend by the use of the language stated in the petition and established by the evidence to charge the appellant with the crime of larceny, or that he associated with or harbored .thieves, but only meant to abuse the appellant for annoying and harassing him with useless and vexatious litigation.

It will be noticed by reading the answer, and the evidence introduced by respondent, that he does not undertake to state or show that the language used by him, of and concerning the appellant, did not on its face mean, or was not understood by those who heard him, to mean, that he, the respondent, was not charging appellant with the crime of larceny, or that they did not understand him to thereby charge appellant with being the associate of thieves and dishonest men, but simply that he, the respondent, had no such intention in his own mind, but that he only intended thereby to abuse the appellant for annoying him by the frequent institution of what he termed frivolous lawsuits. Or more tersely stated, it will be observed by reading the answer and the testimony of the respondent, that he does not charge or contend that at the time of uttering the words complained of in the petition, or in uttering them, he used any other language in connection therewith which detracted from or changed the meaning of said words, when used in their ordinary sense, but undertakes by both his answer and testimony to show that he had a secret or reserved intent not to

charge the appellant with the crime of larceny or per-
jury.

Clearly that testimony was inadmissible, for the
reason that the words of the respondent charged in un-
equivocal language that the appellant was a thief and
the keeper of a rendezvous for thieves, which is action-
able *per se*, and the law presumes malice on the part
of the person who utters them of and concerning an-
other. [Carpenter v. Hamilton, 185 Mo. 603; Hall v.
Jennings, 87 Mo. App. 627.]

In discussing a similar question this court in the
first case cited, at page 614, used this language:

"The argument is, that because, in the same con-
nection in which defendant charged plaintiff with steal-
ing his material, he added, 'You have used it on some-
body else's work,' he thus gave an antidote along with
the poison and shows that defendant was merely mis-
taken in the law rather than guilty of a malicious pur-
pose. Hall v. Adkins, 59 Mo. 144, is cited to sustain
this contention, but the distinction between the facts of
that case and the case at bar is apparent. In that case
a landlord charged his tenant with stealing his corn.
The defense was that defendant, at the time of speaking
the actionable words, detailed to every person who
heard the slanderous words the taking of corn on which
he had a landlord's lien, and defendant honestly be-
lieved the taking of the corn by his tenant under those
circumstances was larceny. The defendant pleaded
these facts in justification, and in mitigation of the
damages. Because the court ruled that although the
defendant honestly believed the facts and circum-
stances attending the taking of the corn constituted
larceny, and so believing and without malice uttered
the slanderous words only to those to whom he com-
municated the facts which in his opinion constituted
larceny, it was no mitigation, the Supreme Court re-
versed the cause. In that case it was apparent from

the facts stated by defendant that the act of plaintiff was not larceny, as plaintiff could not steal his own property. In this case there is no plea of justification or in mitigation of damages, and there was no such communication of the facts upon which he based the slanderous charge to those who heard it as amounted to a justification or mitigation. The 'words proven were as alleged, and we discover no statement in them which in the slightest degree relieved them of the imputation of the crime of larceny. On the contrary, they added emphasis to the charge. It is no qualification of a charge of stealing paint to add to it that the painter had used it on another's property. The charge of stealing the paint was actionable *per se* and the law presumes malice from its utterance and no proof of malice was necessary. [Callahan v. Ingram, 122 Mo. 355; Johnson v. Dicken, 25 Mo. 582; Barbee v. Hereford, 48 Mo. 323; Pennington v. Meeks, 46 Mo. 217.]

"Christal v. Craig, 80 Mo. 367, has no application to the facts of this case. In that case the words in the petition were, 'You have took my pocket-book and money, and have got it there in your pocket,' and it was properly ruled that these words were not actionable *per se* without some explanatory averment showing their application. 'If they were intended and understood to impute the crime of larceny, they would be actionable *per se*.' 'Do they, on their face, without more, convey such imputation? To say you have my pocket-book or money in your pocket, does not necessarily or legally imply its theft. The party might reasonably have so taken it under a claim of right, or through mistake or in sport.'

"But when one says to another in the presence of others, 'You bring back that material that you took of mine,' and when the person addressed denies having any of his material, he follows it up by, 'You have used it on somebody else's work; that material you *stole* from me, if you don't return it, I will make it hot

for you,' there is and can be but one inference drawn, and that is a charge of larceny and a threat of prosecution if the stolen material is not brought back."

There are many other cases in this State, and elsewhere, of like import; and it seems to us that it should not need the citation of any authorities to support the proposition that, when one person says of another, he is a thief or a perjurer, he meant what he said; nor should it require the citation of authority to show that it would be against public policy and good morals to permit such a person to testify that he had a hidden or reserved opinion of the person of whom he spoke, which was different and better than that expressed by the speaker of the words. Such a ruling would invite and place a premium upon perjury.

The intention of the party who speaks of another, is only material to be inquired into when the words spoken have a doubtful, ambiguous or hidden meaning. When that condition exists, not only may the person who used the words testify as to his meaning, but all persons who heard the words spoken may testify as to what they understood the speaker meant by their use.

This is settled by the case of Cook v. Globe Printing Co., 227 Mo. 471.

We are, therefore, of the opinion that the evidence complained of was improperly admitted, and that the action of the trial court in admitting it was reversible error.

II. It is next insisted by counsel for appellant, that the instruction numbered five was erroneous, and did not correctly declare the law to the jury.

This instruction simply put in crystallized form, what the trial court understood the law to be **Instructions.** governing the facts of the case, as shown by the improper evidence introduced; and if that evidence had been admissible, then as a neces-

sary corollary thereto, this instruction would have been proper, but as we have shown by paragraph one of the opinion that said evidence was erroneously admitted, then, it must necessarily follow therefrom that this instruction is erroneous, which reclares the legal effect of that improper evidence.

III.   The last question presented for determination is the language of the court, addressed to counsel for appellant when he objected to the introduction of the evidence, which we have just held was erroneously admitted.

Counsel insisted that the witness was by his testimony invading and usurping the province of the jury, that is, counsel contended it was for the Rebuke of Counsel. jury to ascertain from the language used by the respondent of and concerning the appellant the meaning he intended thereby to convey to those whom he addressed, and that it was improper for the respondent to tell the jury a year or more after the language was spoken what he meant by it; and for that reason, among others, counsel objected to the introduction of that evidence.

For some reason not disclosed by the record the court conceived the idea that counsel by making such objections was criticising the action of the court, and in consequence thereof addressed this language to counsel: "The court is trying this case.  We cannot permit you to criticise its conduct publicly; the court will grant you the right to except to its action; but if you make further reference to the action of the court, the court will fine you for contempt.  You have the right and the court will grant you ample time to make an objection, but for an attorney to criticise the court publicly for its action, that is an act of contempt which we will undertake to punish you for; this is the second time you have undertaken to criticise our conduct; we will not permit you to do that.  You may talk on the

outside; but when you come into court, we propose to exercise our authority.''

As previously stated, there is nothing contained in the record which could have warranted this severe reprimand, without it was the simple action of counsel in making the objection. That, however, should not have subjected him to the treatment he received at the hands of the court, for the objection was timely made and was presented in respectful language, as will appear from the following:

Mr. Brewer, the respondent, among other things testified, that to the best of his memory he stated to Bader, ''You are among a set of thieving sons of bitches.''

''Q. (By counsel for respondent): Let me ask you in this connection whether you had any intention at that time of charging Mr. Shepard with being guilty of larceny?

''Mr. Corbett, Counsel for Appellant: I object to that question for the reason it is an inference to be drawn by the jury from the words that he said.''

''Court. Court will let him answer.

''Mr. Corbett: Note our exceptions.

''A. It looks this way—

''Mr. Corbett: Object to that for the further reason that it permits the witness to take the province of the jury, as it is the jury's province.''

Then follow the strictures of the court before copied.

This evidence was clearly inadmissible, not only for the reason stated, but also for the reason that it was clearly an invasion of the province of the jury.

We are also clearly of the opinion that the language of the court was not justifiable and was erroneous and prejudicial to the rights of the appellant.

We have treated this question purely as a question of law, as it appears upon the face of the record as we see it; but from our long and personal acquaintance of

the learned circuit judge who tried this case, we are satisfied in our own minds that there was something back of what appears of record, which called forth said stricture of the judge. However, we can only look to the record when passing upon legal questions, but when a ruling necessarily involves the personnel of the judge, we have the right to consider the fact that in this case neither the judge nor the respondent is represented in this court, and for that reason, the judge's position is not made clear here.

There is also complaint made because the jury did not find a verdict as to the third count of the petition.

That question is not vital to this appeal and whatever error was, in that regard, committed, can be corrected upon the next trial.

For the reasons stated, the judgment is reversed and the cause is remanded to the circuit court for a new trial.

All concur.