# $\mathfrak{Staunton}$

HARVEY S. COOK v. PATTERSON DRUG COMPANY, INC.

September 11, 1946.

Record No. 3082.

Present, All the Justices.

The opinion states the case.

*A. M. Aiken* and *Meade R. Flynn,* for the plaintiff in error.

*Garrett, Bustard & Wheatley* and *Meade & Talbott,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action under Virginia Code, 1942 (Michie), section 5781*, for insulting words. The defendant filed a plea of not guilty and a notice in writing of its intention to rely upon an apology in mitigation of damages. The jury returned a verdict for the defendant, on which the trial court entered judgment. From that judgment Harvey S. Cook, the plaintiff, obtained this writ of error.

The sole assignment of error is that an instruction given to the jury was contrary to the law and in conflict with other instructions given. This contention renders it only necessary to give a short summary of the evidence.

The plaintiff is a white man, who has been a resident of Danville for twenty-three years. He is what may be termed a brunette in complexion. The defendant corporation owned and operated a drug store and soda fountain on a principal business corner in the city of Danville, Virginia. It catered principally to white persons; but had a policy of selling soda fountain drinks to negroes in paper cups, requiring them to go outside of the store to drink them. Cook often patronized the store prior to the controversy here involved.

On the afternoon of February 25, 1945, Cook went into the drug store, while its soda fountain was being operated by a youth, Alvin L. McDowell, seventeen years old. McDowell had worked in the store only a short time, and said he had never seen Cook before this occasion. There were several persons in the store, including two colored boys standing near the fountain, and some ladies sitting at a table. Cook asked McDowell for a coca-cola. The boy replied, "I will give you a pepsi-cola." Cook acquiesced in this, and the boy gave him a pepsi-cola in a paper cup, and asked him for one cent more, which was paid. About this time, John C. Jackson, a white man, came up near the plaintiff, and asked for a coca-cola in a glass, which was served to

---

*"All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable." (Code 1887, section 2897; Acts 1940, chapter 192, page 294).

him. Cook then remonstrated with the boy for not letting him have a coca-cola. The boy replied, "We don't serve negroes coca-colas, and we don't let them drink out of glasses." Cook reached up and pulled his hair, and asked if it looked like a negro's hair. The boy said, "Yes. I have seen whiter negroes than you are," and picked up a milk bottle, and asked Cook what he was going to do about it. There were some warm words between them, and the boy said, "I am sorry I made a mistake." Cook then went across the store and spoke to Edgar Rice, who was in charge of the store at that time, and Rice apologized for what had happened. Cook then returned to the soda fountain, and resumed the argument with the boy, subsequently bringing in a city police officer to talk with him. The boy admitted to the police officer that he had called Cook a negro, and said that he was sorry that he had made the mistake.

McDowell testified that he had been refused enlistment in the United States Navy because of defective eyesight.

During the earlier part of the controversy between Cook and the boy, Jackson left the soda fountain and went over to the cigar counter, fearing, he said, that there would be a fight. Asked if he thought Cook seemed mad, he replied, referring to the boy, "I would have went after him."

The trial court gave four instructions at the request of the plaintiff, and two for the defendant. We are here concerned only with instructions numbered I and III, given for the plaintiff, and A given at the request of the defendant.

Instructions I and III read as follows:

"I—The Court instructs the jury that if they believe from the greater weight of the evidence that the words spoken to the plaintiff by the young man at the defendant's soda fountain were such words that from their usual construction and common acceptation are construed as an insult, and tend to violence and a breach of the peace, they should find their verdict for the plaintiff."

"III—The Court instructs the jury that in determining whether or not the language complained of in the notice of motion for judgment is insulting and tending to violence

and breach of the peace, the words and sentence must be construed in the plain and popular sense in which the rest of the world would naturally understand them; that is, that they are to be construed according to their usual construction and acceptation."

Instruction A was in the following language:

"A—The Court instructs the jury that this is an action brought by the plaintiff against the defendant under a Virginia Statute which provides that all words which from their usual construction and common acceptation are construed as insults and tend to violence and breach of the peace shall be actionable; that the burden of proof is upon the plaintiff to prove to the jury by the greater weight of the evidence that the words complained of by the plaintiff are to be construed as insults and have a tendency to violence and breach of the peace.

"The Court further instructs the jury that while the literal meaning of the words complained of may import insult, yet if they believe the manner of their utterance and the circumstances under which they were said would satisfy any reasonable person that no insult was intended, they must find their verdict for the defendant."

It is to the last paragraph of instruction A that the sole assignment of error is directed, as being contrary to the law, and in conflict and irreconcilable with instructions I and III. No other question is involved.

The effect of the instruction was to tell the jury that the intent of a person who uses words importing an insult is an essential element of the right of the offended person to maintain an action for the utterance of such words. The instruction confuses the issue, whether the words were insulting as defined by the statute, with the question whether a reasonable person would be satisfied that no insult was intended under the circumstances of their utterance. It thus bases the right of action of the offended party on the intention of the party using the words rather than upon a proper construction of the words as required under preceding instructions.

The gravamen of the action is the insult to the feel-

ings of the offended party, not the intention of the party using the words. Whether or not the words used are insulting is a jury question, depending on whether from "their usual construction and common acceptation" they may be "construed as insults, and tend to violence and breach of the peace." The motive which actuated the person using the words is not material, except upon the questions of malice and the measure of damages. *Brooks* v. *Calloway*, 12 Leigh (39 Va.) 466, 473; *Dillard* v. *Collins*, 25 Gratt. (66 Va.) 343, 356; 33 Am. Jur., Libel & Slander, section 112; 36 C. J., Libel & Slander, section 162.

As a general rule, in an action for defamation, where the words uttered have a clear and definite meaning, it is immaterial what meaning the speaker intended to convey. He may have meant one thing and said another. He is answerable for improperly or inadequately expressing his meaning. Words are not to be construed according to the secret intent of the speaker, but from the expression used in accordance with their usual meaning and common acceptation.

It is not what the defendant intended to say, but what he said that operates to cause the injuries. The jury should not be left to indulge in conjectures as to the import of the words spoken. It is the duty of the court to define what constitutes insulting words, and it is for the jury to say whether the particular words come within the definition.

In *Holmes* v. *Jones*, 147 N. Y. 59, 41 N. E. 409, 49 Am. St. Rep. 646, it was said:

"The publication of a libel is the wrongful act presumably injurious to those persons to whom it relates, and in the absence of legal excuse, gives a right of recovery irrespective of the intent of the defendant who published it, and this although he had reason to believe the statement to be true, and was actuated by an honest or even commendable motive in making the publication."

In *Shepard* v. *Brewer*, 248 Mo. 133, 154 S. W. 116, L. R. A. 1917D, 199, 204, this is said:

"The intention of the party who speaks of another is

only material to be inquired into when the words have a doubtful, ambiguous, or hidden meaning. When that condition exists, not only may the person who used the words testify as to his meaning, but all persons who heard the words spoken may testify as to what they understood the speaker meant by their use.

See *McKinly* v. *Rob*, 20 Johns. (N. Y.) 351.

■ Under Code, section 5781, legal malice is presumed from the utterance of insulting words. It may be found in the negligence or recklessness of the defamer's acts. An injury to a defamed person may be as grievous whether or not his defamer had an honest belief in the truth of his words.

■ Proof of actual or express malice is indispensable when punitive damages are asked. In the present case, there was no question of punitive damages submitted to the jury. The jury was instructed that, under the facts and circumstances, there could be no recovery of punitive damages.

The real issue was whether the words of the defendant were, "from their usual construction and common acceptation," insulting and tended to "violence and breach of the peace," not whether they were intended to be insulting. The witness, Jackson, said he left the store because he was afraid there would be a fight, and that he would have entered into a fight with McDowell, if the words had been addressed to him.

In *Montgomery Ward & Co.* v. *Nance*, 165 Va. 363, 182 S. E. 264, in passing upon a different set of facts, this was said:

"It has been held in Virginia that it is inadmissible to ask a defendant his feelings and motives in making a slanderous charge and whether it was made with ill will against the plaintiff, as his feelings and motives are immaterial after the slanderous words are proven to have been spoken, and the law will not allow him to say no malice was intended. *Dillard* v. *Collins*, 25 Gratt. (66 Va.) 343."

The defendant attempts to justify the instruction by relying on certain language of this court in *Moseley* v. *Moss*,

6 Gratt. (47 Va.) 534; *Brooks* v. *Calloway, supra; Corr* v. *Lewis,* 94 Va. 24, 26, 26 S. E. 385. The issue in each of these cases was different from that now before us.

In *Abernathy* v. *Emporia Mfg. Co.,* 122 Va. 406, 95 S. E. 418, Judge Burks said:

"Language used by an appellate court in deciding a case may be entirely proper and correctly state the law, and yet be wholly unsuitable as an instruction to the jury, even where the facts of the two cases are similar. The appellate judge frequently uses argumentative language and also freely expresses his opinion upon the facts of the cases, neither of which would be appropriate in an instruction to the jury. So that the mere fact that certain language has been used by the judge of the appellate court in rendering an opinion is not of itself sufficient to justify the use of the same language by a trial court in its instruction to the jury."

Nothing we have said is in conflict with *Guide Pub. Co.* v. *Futrell,* 175 Va. 77, 7 S. E. (2d) 133, and *Rosenberg & Sons* v. *Craft,* 182 Va. 512, 29 S. E. (2d) 375, 151 A. L. R. 1095.

In *Guide Pub. Co.* v. *Futrell, supra,* we held that neither the words used nor the circumstances under which they were used tended to show any reflection upon the plaintiff. Likewise, in *Rosenberg & Sons* v. *Craft, supra,* we held that an erroneous statement in a letter that a debt was long past due was not insulting and actionable, under the circumstances there under consideration.

The doctrine which the defendant seeks to invoke is not applicable here There was no question of privilege. The words used had a certain and definite meaning. There was nothing to show that they were uttered in a friendly or sociable manner. The insult to the feelings of the plaintiff was, as we have said, the gravamen of the action, not the intention of the person using the words.

For the foregoing reasons, we are of opinion that the trial court erred in giving Instruction A. Its judgment is reversed, the verdict of the jury set aside, and the case remanded.

*Reversed and remanded.*