Billy V. BEWLEY et al., Plaintiffs,

v.

Lee SIMS, Defendant.

Civ. No. H–76–577.

United States District Court,
D. Maryland.

Aug. 16, 1977.

Marvin H. Schein, Baltimore, Md., for plaintiffs.

Marvin M. Waldman, Chevy Chase, Md., for defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

Diversity jurisdiction has been asserted in this civil action pursuant to 28 U.S.C. § 1332(a). Plaintiffs are citizens of Maryland, residing in New Carrollton, and defendant is a citizen of Virginia, residing in Falls Church. Plaintiffs assert that the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs.

Plaintiffs are seeking damages for personal injuries and other losses sustained as a result of an altercation between the parties which occurred while the plaintiffs were social guests at the defendant's home in Falls Church, Virginia. Plaintiff Bewley and his date, plaintiff Hinkel,[1] had been

1. Plaintiff Hinkel subsequently married plaintiff Bewley.

invited to the defendant's home on January 18, 1976 to watch the Super Bowl football game on television and to have dinner with the defendant. Numerous drinks were consumed by all the parties and, disappointed at the outcome of the game, defendant allegedly during the course of dinner suddenly struck plaintiff Bewley and later struck plaintiff Hinkel, causing them injuries. Compensatory and punitive damages have been sought by the plaintiffs. Defendant in turn has asserted a counterclaim against the plaintiffs, alleging that plaintiff Bewley attacked him first and that plaintiff Hinkel was not involved in the altercation in any manner. Defendant also seeks to recover damages under his counterclaim for malicious prosecution because of criminal proceedings which were brought by the plaintiffs against him and which were later dismissed.

At an early stage of these proceedings, the defendant moved to dismiss the amended complaint on the ground, *inter alia*, that this Court lacks jurisdiction because the amount in controversy is less than $10,000. In denying this motion, this Court concluded that it could not determine to a legal certainty from the facts pleaded in the amended complaint that the matter in controversy did not exceed $10,000. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The parties were directed to complete discovery, and defendant was advised that he might file an appropriate motion at a later date if it appeared, following discovery, that the Congressional mandate of a $10,000 minimum amount of damages had not been satisfied.

Various discovery proceedings were then undertaken by the parties, including the taking of the depositions of each of the plaintiffs by the attorney for the defendant. Following the completion of discovery, a pretrial conference was held with the Court on May 24, 1977 and a final Pretrial Order was entered on June 17, 1977.

Thereafter, on July 12, 1977, defendant filed a motion to dismiss this action for lack of jurisdiction because the matter in controversy did not exceed $10,000. A hearing was held in open court on July 13, 1977 on this motion,[2] and plaintiffs were permitted subsequently to file a memorandum in opposition to the pending motion to dismiss.

After a review of the pleadings and discovery in the light of the memoranda submitted by the parties, this Court concludes that the defendant's motion to dismiss should be granted. From the record here, this Court concludes to a legal certainty that neither plaintiff will be able in this case to recover an amount in excess of $10,000.

## I

### The Law

The issue here is whether the controlling facts as disclosed by discovery are legally insufficient to give rise to a $10,000 claim. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, supra; *Nelson v. Keefer*, 451 F.2d 289 (3d Cir. 1971). If either one of the two plaintiffs here meets the jurisdictional amount, then the case has been properly brought in this Court. *Nelson v. Keefer, supra*, at 291. However, the plaintiffs may not aggregate their claims to satisfy the jurisdictional amount. *Employers Mut. Cas. Co. v. Maggart*, 261 F.Supp. 768 (W.D. Tex.1966).

In 1958, Congress amended 28 U.S.C. § 1332, raising the requisite amount in controversy from $3,000 to $10,000. The stated purpose of the 1958 amendment was to make jurisdiction available "in all *substantial* controversies where other elements of Federal jurisdiction are present. The jurisdictional amount should not be so high to convert the Federal courts into courts of big business nor so low as to fritter away their time in the trial of petty controversies." (Emphasis added). U.S.Code Cong. & Admin.News, S.Rep.No. 1830, 85th Cong., 2d Sess., p. 3101 (1958). (Emphasis added).

---

**2.** This case had originally been scheduled for trial on July 13, 1977. However, because of defendant's motion to dismiss and certain

pending discovery matters, the trial was postponed.

In *Healey v. Ratta*, 292 U.S. 263, 269–70, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1933), the Supreme Court, in discussing an earlier form of § 1332, said the following:

From the beginning suits between citizens of different states, or involving federal questions, could neither be brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specified amount. Cases involving lesser amounts have been left to be dealt with exclusively by state courts, except that judgment of the highest court of a state adjudicating a federal right may be reviewed by this Court. Pursuant to this policy the jurisdiction of federal courts of first instance has been narrowed by successive acts of Congress, which have progressively increased the jurisdictional amount. The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. *See Kline v. Burke Construction Co.*, 260 U.S. 226, 233–234 [43 S.Ct. 79, 67 L.Ed. 226]. Due regard for the rightful independence of state governments, which should actuate federal courts, requires *that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.* *See Matthews v. Rodgers, supra* [284 U.S. 521], at 525 [52 S.Ct. 217, 76 L.Ed. 447]; *compare Elgin v. Marshall*, 106 U.S. 578 [1 S.Ct. 484, 27 L.Ed. 249]. (Emphasis added).

In *Snyder v. Harris*, 394 U.S. 332, 339–40, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Supreme Court reaffirmed its previous interpretation of Congressional intention by pointing out that the Congressional purpose in increasing the amount in controversy to $10,000 "was to check to some degree, the rising case load of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction." In *Nelson v. Keefer, supra* at 294, the Third Circuit concluded "that Congress intended that trial judges exercise permissible discretion prior to trial in adjudicating challenges to jurisdiction." In an Opinion by Judge Aldersert, the Court went on to say the following (at page 295):

Because the federal judiciary has been too timid to execute the congressional mandate in personal injury actions, we have all contributed to clogging dockets, monopolizing trial rooms, and committing the expense and energies of our system to a plethora of cases which do not belong in federal courts.

In *Gauldin v. Virginia Winn-Dixie, Inc.*, 370 F.2d 167 (4th Cir. 1966), the Fourth Circuit, although not ruling on the issue, expressed grave doubt as to the existence of federal jurisdiction in that diversity action. The Court said the following (at 170, n. 1):

Congress acted to raise the federal jurisdictional amount from $3,000 to $10,000, undoubtedly intending to relieve the federal courts of litigation of relatively minor importance. In cases where the plaintiff's actual damages are small and his injury clearly appears slight, the District Court should carefully scrutinize the special damages and the offers of proof. A vigorous, aggressive and intelligent inquiry at the pre-trial stage and the dismissal because of the lack of jurisdiction where warranted will, it is hoped, have the salutary effect of discouraging the institution of actions in the federal courts where it is clearly apparent that the plaintiff has arbitrarily and without justification alleged damages equal to or in excess of the statutory amount so that he may invoke the jurisdiction of a federal court.

■ Inquiry into the jurisdictional amount should not be made before the pertinent facts have been developed by way of discovery proceedings or otherwise. However, in *Nelson v. Keefer, supra*, the Third Circuit emphasized that where sufficient information has been made available through pretrial discovery and the disclosure of medical reports, the trial court has

the power to evaluate the amount in controversy prior to trial. (451 F.2d at 296). In this case, there has been full discovery, a Pretrial Order has been filed, and the case is now ready for trial.

■ An evaluation of the record here convinces this Court that the dispute in this case is no more than a petty controversy which should properly be resolved in an appropriate state court.[3] Discovery in this case makes it clear that each plaintiff sustained only minor damages. The parties were drinking together at a social occasion in defendant's home when tempers flared, leading to brief physical combat. This altercation at a private residence was hardly the type of substantial controversy that Congress had in mind in 1958 when it amended § 1332. Assuming that plaintiffs prevail, it appears to a legal certainty that the recovery of each one would not exceed the $10,000 minimum.

## II

### Compensatory Damages Claimed

Plaintiff Thea M. Hinkel Bewley claims to have sustained a broken nose and two black eyes as a result of the altercation which occurred on January 18, 1976. She claims medical expenses in the amount of $225.20 and was seen by a Dr. Edward T. O'Donnell for her broken nose on four separate occasions. The last time she consulted with that physician was on April 19, 1976, and in his report of May 7, 1976, Dr. O'Donnell stated that Miss Hinkel appeared to be in good condition and that no further treatment was indicated.

The female plaintiff was also seen by Dr. Gilbert N. Feinberg on April 26, 1976 as a result of her complaint of blurred vision in her left eye. Dr. Feinberg prescribed glasses, and in his report of July 14, 1976, stated that he could find "no ocular pathology due to the accident that occurred on January 18, 1976."

Plaintiff Bewley claims to have suffered a bitten finger and muscle injury in his neck, and is here seeking medical expenses in the amount of $140.00. Bewley was not seen by a doctor until nine days after the incident, and he has visited a doctor's office on only two occasions for treatment. On April 5, 1976, Bewley was seen by Dr. A. E. Subong, who asked him to return for a follow-up consultation. According to Dr. Subong's report of April 29, 1976, Bewley never returned.

Each of the plaintiffs claims a loss of earnings resulting from the alleged assault. Both plaintiffs were employed by the defendant at a dance studio operated by the defendant in Silver Spring, Maryland. Because of the bad feeling between the parties engendered by this incident, both plaintiffs voluntarily "quit" the day after the incident. Under these circumstances, plaintiffs would not be able to prove that they sustained lost earnings because they were assaulted by the defendant on January 18, 1976.

Thus, the record here shows that the plaintiffs' injuries were minor. Their medical bills were not large ones and their injuries were in no way permanent nor did they require future treatment or involve continuing pain or disfigurement. Plaintiffs are not entitled to recover lost earnings and they have not claimed that their earning power has been affected by this incident in any way. The two plaintiffs purchased their own dance studio in July of 1976, spent some time fixing it up and have been operating their own business since late 1976. Under all these circumstances, this Court finds that neither plaintiff could prove at trial compensatory damages in excess of $10,000.

## III

### Punitive Damages

■ Plaintiffs contend that this Court has jurisdiction in this case because at the trial they would be able to prove punitive damages in an amount in excess of $10,000. In determining the jurisdictional amount in

---

**3.** It is agreed that limitations would not bar a civil action filed by plaintiffs against the defendant in an appropriate court in the State of Virginia.

a case of this sort, a claim for punitive damages will be scrutinized even more carefully than would a claim for actual damages, and a judge may exercise more discretion in determining whether punitive damages can be recovered than where actual damages are at issue. *Brown v. Bank of America Nat. Trust & Sav. Ass'n*, 281 F.Supp. 82, 84 (D.Ill.1968).

It is agreed in this case that Virginia law is controlling. In Virginia, punitive damages are allowable only where there is misconduct or actual malice or such malice as to evince a spirit of malice or criminal indifference to civil obligations. *Giant of Virginia v. Pigg*, 207 Va. 679, 152 S.E.2d 271; *Wood v. American National Bank*, 100 Va. 306, 40 S.E. 931; *Friedman v. Jordan*, 166 Va. 65, 184 S.E. 186. Where punitive damages are asked, there must be proof of actual or express malice. *Cook v. Patterson Drug Co.*, 185 Va. 516, 522, 39 S.E.2d 304.

In *Giant of Virginia v. Pigg, supra*, the Court found that action taken by a representative of the defendant in an action for malicious prosecution constituted an aggravated circumstance which would warrant an inference of legal malice insofar as compensatory damages were concerned. However, the Court further held that no actual malice had been proved and that the trial judge correctly set aside that portion of the jury's verdict which awarded punitive damages. As an example of the type of case appropriate for the award of punitive damages, the Court in *Baker v. Marcus*, 201 Va. 905, 910, 114 S.E.2d 617, cited the facts in *Friedman v. Jordan, supra*, where the defendant operator of the automobile chased the plaintiff and wilfully ran him down and injured him.

■ Applying the principles of the Virginia cases here, this Court is satisfied that neither plaintiff would be entitled to an award of punitive damages in excess of $10,000 or to a combined award of both punitive and compensatory damages in excess of that figure. The plaintiffs and the defendant had been good friends before this incident, and defendant had not previously threatened or assaulted either of the plaintiffs. The parties had been drinking together on the night in question, and alcohol quite clearly contributed to the altercation. Indeed, it has been stipulated not that the parties had one or two drinks but that "A *quantity* of alcohol was consumed by *all* the parties." (Emphasis added). The deposition of the plaintiffs indicates that defendant struck them without warning or motivation. The Virginia standard of "criminal indifference" could hardly be applied in this case, as the criminal proceeding against defendant was dismissed.

Counsel for the plaintiffs argue that any willful or intentional act would permit a recovery for punitive damages. Were this proposition to control in a case of this sort in which the jurisdictional amount is in issue, a simple assault or battery case would in every instance be a proper case to bring into federal court if diversity of citizenship existed. As the Court pointed out in *Petroleum Transit Company v. Copeland*, 240 F.Supp. 585, 587 (D.S.C.1965), there is no theoretical top limit for an award of punitive damages and a court must view any claim for same realistically. This Court does not conclude that Congress intended every civil case arising out of an assault or battery to be a "substantial controversy" which would be cognizable in federal court if the parties were of diverse citizenship. In any event, this Court is satisfied that Virginia law would not permit the recovery under the circumstances here of punitive damages in such an amount as would satisfy the $10,000 requirement, even if added to the small amount of compensatory damages which might be recovered.

IV

*Conclusion*

For these reasons, this Court is convinced to a legal certainty that the evidence in this case would not permit this Court to sustain a verdict for either plaintiff in the amount of $10,000 or more. This controversy accordingly should be presented to the appropriate state court.

Accordingly, it is this 16th day of August, 1977, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion to dismiss for lack of jurisdiction be and the same is hereby granted; and

2. That this action be and hereby is dismissed without prejudice, with costs.