COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Willis and Clements
Argued at Alexandria, Virginia


LONNIE L. TWEED, JR., S/K/A
 LONNIE LEE TWEED
                                            OPINION BY
v.   Record No. 2783-99-2         JUDGE JERE M. H. WILLIS, JR.
                                          AUGUST 14, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    John F. Daffron, Jr., Judge

            David B. Hargett (Morrissey & Hershner, PLC,
            on brief), for appellant.

            Richard B. Smith, Senior Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     On appeal from his convictions of first-degree murder,

attempted robbery, use of a firearm in the commission of murder,

and use of a firearm in the commission of attempted robbery,

Lonnie L. Tweed, Jr., contends that the trial court erred (1) in

allowing a witness to testify as to what Tweed meant when he

said, "Time to get paid," (2) in refusing to instruct the jury

concerning the abolition of parole in the Commonwealth, (3) in

holding the evidence was sufficient to support his convictions,

and (4) in denying his motion for a new trial based on

after-discovered evidence.  We hold that the trial court erred

in refusing to instruct the jury on the abolition of parole.

Because it erred further in denying Tweed's motion for a new

trial, we reverse the judgment of the trial court and remand the case for retrial, if the Commonwealth be so advised.

## I.   BACKGROUND

On June 26, 1998, James M. Hoover (the victim) was riding his motorcycle when he was shot and killed.  David Sanchez fired the lethal shots from a car driven by Roger Narragon, in which Sanchez, Shaun Holmes, Ryan Bennett, and Tweed were passengers.

Bennett testified that the men in the car had been to a party and were drinking heavily and that he was the only one who had not consumed LSD.  He testified that "Sanchez had a gun wrapped in a cloth" and Tweed had "wash rags tied together." Bennett was unsure whether Sanchez had shown the gun to the others, but he thought everyone knew about it.  He further testified that, as the men were leaving the party, Tweed said, "Time to get paid."  Over objection, Bennett stated that he understood Tweed's comment to mean "[r]obbery."

After driving around for several hours, the men spotted the victim at a gas station.  Sanchez made a comment about the victim, and Narragon turned the car around.  He made another U-turn and pulled his car alongside the victim.

Bennett testified that, even though he did not want to participate in a robbery and was only "along for the ride," he thought a robbery might occur.  He testified that as the car approached the victim, Tweed told him to "do it," which he understood to mean "rob the man."  Bennett refused.  He

-

testified that without any further discussion or suggestion, Sanchez said, "I'll do it," and, leaning across Bennett and Tweed, shot the victim. The five men left the area without stopping.

At the conclusion of the evidence, Tweed moved to strike on the ground that the evidence failed, as a matter of law, to support convictions for murder, attempted robbery, or the related firearm charges. The trial court denied the motion, and the jury found Tweed guilty of all four charges.

During the sentencing phase of the trial, the jury inquired whether Tweed would be eligible for parole. Over Tweed's objection, the trial court instructed the jury that they should "impose such punishment as [they] feel is just under the evidence and within the instructions of the Court" and that they should not concern themselves "with what may happen afterwards."

Post-trial but before sentencing, Tweed moved for a new trial based upon newly discovered evidence. In support of his motion, he filed his trial attorney's affidavit and a transcript of Sanchez's testimony in his own trial. The trial court denied the motion and sentenced Tweed to forty-eight years in prison, in accordance with the jury verdicts.

## II. WITNESS OPINION TESTIMONY

Tweed contends that the trial court erred in allowing Bennett to testify as to his understanding of Tweed's statement: "Time to get paid." Bennett testified that the statement meant

-

"[r]obbery."  Tweed contends that this testimony constituted inadmissible lay opinion.  We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and the ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  "Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted."  Coe v. Commonwealth, 231 Va. 83, 87-88, 340 S.E.2d 820, 823 (1986).

In Cook v. Patterson Drug Co., 185 Va. 516, 39 S.E.2d 304 (1946), the Supreme Court approved the rule that when "words have a doubtful, ambiguous, or hidden meaning . . . not only may the person who used the words testify as to his meaning, but all persons who heard the words spoken may testify as to what they understood the speaker meant by their use."  Id. at 521-22, 39 S.E.2d at 307 (citation omitted).

Bennett's testimony explained that Tweed used the term "[t]ime to get paid" as part of a peculiar jargon, having a specialized meaning to the group in the car.  This meaning differed from the usual, conventional use of that term.  It imported a meaning not commonly known.  Thus, as a person familiar with that jargon, Bennett was properly permitted to explain the term's meaning.

-

Bennett's explanation of the meaning and context of Tweed's ambiguous statement was relevant to the issue of Tweed's motive and intent when he entered the car with the other men. Moreover, Bennett's explanation was properly confined to his understanding of the term as opposed to bare speculation about what Tweed meant. We find no abuse of the trial court's discretion in admitting that explanation.

### III.  JURY QUESTION

During sentencing deliberations, the jury asked the trial court, "Is parole possible for any or each sentence?"  The trial court replied, "[Y]ou should impose such punishment as you feel is just under the evidence and within the instructions of the Court.  Do not concern yourself with what may happen afterwards."  Tweed contends that the trial court erred in refusing to instruct the jury concerning the abolition of parole.  We agree.

This issue is controlled by Fishback v. Commonwealth, 260 Va. 104, 532 S.E.2d 629 (2000).  In Fishback, the Court held:

> [H]enceforth juries shall be instructed, as
> a matter of law, on the abolition of parole
> for non-capital felony offenses committed on
> or after January 1, 1995 pursuant to Code
> § 53.1-165.1.  In addition, because Code
> § 53.1-40.01 is in the nature of a parole
> statute, where applicable juries shall also
> be instructed on the possibility of
> geriatric release pursuant to that statute.

The Court limited Fishback "prospectively to those cases not yet final on [June 9, 2000]."  Id. at 116, 532 S.E.2d at

-

634. Because this case was pending when Fishback was decided, Fishback applies.

## IV.  SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged on appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  Even where the evidence is entirely circumstantial, the inferences to be drawn lie within the province of the fact finder and will not be disturbed on appeal so long as those inferences are reasonable and are supported by the evidence.  See O'Brien v. Commonwealth, 4 Va. App. 261, 263-64, 356 S.E.2d 449, 450 (1987).  "[C]ircumstantial evidence alone is sufficient to sustain a conviction."  Johnson v. Commonwealth, 2 Va. App. 598, 604-05, 347 S.E.2d 163, 167 (1986).  However, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence."  Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987).

Viewed in the light most favorable to the Commonwealth, the evidence proved that before the men entered the car on the night of the shooting, Tweed said, "Time to get paid," meaning it was time to rob someone.  Sanchez entered the car carrying a gun "wrapped in a cloth," and Tweed entered the car carrying "wash rags tied together."  Bennett believed the men were going to

-

commit a robbery. He believed Sanchez had shown the other men his gun. When the men saw the victim, Tweed told Bennett to "do it," meaning to rob the victim. When Bennett refused, Sanchez said, "I'll do it." He then shot and killed the victim. Thus, credible evidence supports the Commonwealth's theory that Tweed was responsible for the crimes under a concert of action theory.

Concert of action has been defined as "action that has been planned, arranged, adjusted, agreed on and settled between the parties acting together pursuant to some design or scheme." Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994). "All participants in such planned enterprises may be held accountable for incidental crimes committed by another participant during the enterprise even though not originally or specifically designed." Id. In this case, the men shared an intent to commit robbery when they entered the car. Shooting the victim was the first act toward consummation of that agreed act, notwithstanding the men fled before accomplishing the robbery. Thus, Tweed may be held accountable for the shooting, the attempted robbery and the related firearm charges.

## V.   MOTION FOR A NEW TRIAL

"Motions for new trials based upon after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution and are awarded with great reluctance." Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149

-

(1983) (citation omitted).  Because such a motion is addressed

to the sound discretion of the trial court, a ruling thereon

will be reversed only upon a showing of an abuse of discretion.

See Mundy v. Commonwealth, 11 Va. App. 461, 481, 390 S.E.2d 525,

536, aff'd on reh'g en banc, 399 S.E.2d 29 (1990).

> Because of the need for finality in court
> adjudications, four requirements must be met
> before a new trial is granted based upon an
> allegation of newly-discovered evidence:
> (1) the evidence was discovered after trial;
> (2) it could not have been obtained prior to
> trial through the exercise of reasonable
> diligence; (3) it is not merely cumulative,
> corroborative or collateral; and (4) is
> material, and as such, should produce an
> opposite result on the merits at another
> trial.

Id. at 480, 390 S.E.2d at 535.  The moving party must satisfy

all four requirements to justify a new trial.  See Carter v.

Commonwealth, 10 Va. App. 507, 512-13, 393 S.E.2d 639, 642

(1990).

In support of his motion for a new trial, Tweed placed in

evidence the affidavit of his trial counsel, John B. Boatwright,

III, setting forth as follows:

> 1.  I represented Mr. Tweed from the time
> his [sic] was charged with these offenses up
> to and including the time of the execution
> of this affidavit.
>
> 2.  At all times, it was made clear to me
> that Davis Sanchez was effectively "off
> limits" and that I would not be allowed to
> call him as a witness or interview him prior
> to any possible testimony.

-

3. I had no idea what Sanchez's version of the relevant events was until after he testified in his own defense during his own trial.

4. As far as I know, the version of events given by Sanchez in his on [sic] defense in his own trial at his own trial was simply not in existence anywhere that I could locate it prior to the commencement of Tweed's trial in April of 1999.

Tweed also placed in evidence the testimony of Denis C. Englisby, who represented David Sanchez with respect to charges brought against Sanchez arising out of the incident underlying the charges upon which Tweed was convicted. Mr. Englisby testified, in relevant part, as follows:

Q: When did Mr. Sanchez's trial take place?

A. I think sometime in April, I'm not sure.

Q. Well let me ask you this: Was it before or after Mr. Tweed's trial?

A. It was, I believe, before Mr. Tweed's trial. I'm not sure . . . .

 *     *     *     *     *     *     *

Q. Would you allow today Mr. Sanchez to testify about anything relating to his involvement in this case?

A. No.

Q. Would you have allowed it anytime prior to today?

A. No.

Q. Were you present during the entire Sanchez trial?

A. Yes.

-

Q. Did Mr. Sanchez testify in his own defense in that case?

A. Yes.

Q. Did he testify in relationship to the events that led up to the killing of Mr. Hoover?

A. Yes.

The record in this case shows that Tweed was tried on April 14 and 15, 1999. Tweed further placed in evidence a transcript of Sanchez's testimony given at his trial, which the transcript shows was conducted June 29, 1999.

Sanchez testified that on the night in question he had been drinking and had consumed LSD. He further testified, in pertinent part:

> Okay. Well we came across the -- I don't know the name of the bridge, but it's a bridge that connects Hopewell and Chester -- came across that, and we were on Route 10, and then we came upon the East Coast, and we just kept going. And then we turned around, for what reason, I don't know. The music was on. I don't know. The driver turned around. And then when we got to the --
>
>    *       *       *       *       *       *       *
>
> Then when we got -- we turned around, there was a stoplight there, and we waited for it, and it turned green, and then we turned back around. And then when we was heading towards, westbound towards Richmond, we came across -- well, to me when we got up beside the motorcycle, what I seen was I had a hallucination due to the LSD, so what I seen was when we pulled up beside it, it was a demon on flames, and it was laughing and it was calling my name. And Your Honor, I just

-

> leaned out the window and started shooting
> at that.
>
>     And then we just kept going and went
> through Colonial Heights, and then on our
> way back home to Theresa's house, we came
> through Prince George County.

In support of his motion for a new trial, Tweed argued that the decision in his case came down to a choice between his testimony and Bennett's.  He argued:

> [O]bviously, you have to assume that [the
> jury] credited Bennett enough to reach a
> final finding of guilt.  Would Mr. Sanchez
> have caused them to do otherwise?  We
> suggest there is a very strong likelihood of
> that because he is the only person, as the
> shooter, who can say -- you know, could have
> said or could say ever what it was that made
> him do what he did and that would have been
> a correct and a material conflict with what
> Mr. Bennett said.

Denying Tweed's motion for a new trial, the trial court said:

> I don't know . . . what affect, if any,
> Sanchez' testimony may have had if it were
> presented before the jury.  It's not, as
> been characterized, the bombshell and the
> question, is it likely to have produced a
> different result?  I can't really say that
> from the discussions made.

This ruling was error.

The record of the motion for a new trial establishes beyond question that Sanchez's trial took place more than two months after Tweed's.  Prior to Sanchez's trial, his attorney denied access to him and refused information as to what he would say. The record discloses no other avenue by which Tweed's counsel

-

could have gained access to Sanchez's account prior to Tweed's trial. Thus, the record establishes that the substance of Sanchez's account was in fact discovered after Tweed's trial and that it could not have been discovered prior to his trial through the exercise of reasonable diligence.

Sanchez's account was not merely cumulative, corroborative or collateral. It neither added to nor corroborated any other evidence in Tweed's trial. It addressed directly an issue central to Tweed's trial, why Sanchez shot and killed Hoover.

The Commonwealth's concert of action theory of Tweed's guilt was based upon his initiation of and participation in the events leading up to Sanchez shooting Hoover. Sanchez testified that he shot Hoover for reasons independent of anything Tweed said or did. If believed, Sanchez's account exonerates Tweed. Therefore, it is material.

The trial court erred in denying Tweed's motion for a new trial.

The judgment of the trial court is reversed, and this case is remanded for retrial in accordance with the views herein expressed, if the Commonwealth be so advised.

Reversed and remanded.

-