# Wytheville.

## William J. Johnson v. Commonwealth.

June 11, 1925.

Argued before Judge Chichester took his seat.

1. Appeal and Error—*Credibility of Witnesses for Jury—Reversal—Verdict Plainly Contrary to the Evidence.*—The Supreme Court of Appeals cannot interfere with a judgment on the ground that the verdict is contrary to the evidence, unless it is plainly wrong, or without evidence to support it. The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and if there is any evidence to support the verdict, it cannot be set aside unless the opposing evidence is so strong that it can be said that the verdict is *plainly* contrary to the evidence. Unless the opposing evidence is of this weight, the plaintiff in error stands in the Supreme Court of Appeals as on a demurrer to the evidence. The Supreme Court of Appeals has nothing to do with the preponderance of the evidence.

:2. Appeal and Error—*Verdict Contrary to the Evidence—Conflict in the Evidence—Case at Bar.*—In the instant case, if the evidence for the Commonwealth alone is looked at, there can be no doubt that it amply supports the verdict. It is only after evidence for the accused is introduced that any doubt arises as to the guilt of the accused, and this doubt it was the province of the jury to solve. They have solved it adversely to the accused, and while the court might not, if on the jury, have solved it in the same way, it was unable to say that the testimony in favor of the accused was so strong that the verdict was plainly contrary to the evidence.

out; that on the approach of the prohibition officers he fled; and that accused had a bad reputation as a violator of the prohibition law, it could not be said that a verdict of guilty was plainly wrong, although accused and the men operating the still testified that accused had no interest in and was not working at or about the still.

Error to a judgment of the Circuit Court of Hanover county.

*Affirmed.*

The opinion states the case.

*Haw & Haw,* for the plaintiff in error.

*Attorney-General John R. Saunders, Assistants Attorney-General Leon M. Bazile* and *Lewis H. Machen,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

Johnson, a colored man, was jointly indicted with Coleman Wickham, Roe Nuckols and David Nuckols, white men, for illegally manufacturing ardent spirits. The three white men plead guilty. Johnson plead not guilty, and upon his trial was found guilty and sentenced to pay a fine of $50.00 and to be imprisoned for thirty days. He seeks to have this judgment reversed on the ground that the verdict is contrary to the evidence.

[1] We cannot interfere with the judgment unless it is plainly wrong, or without evidence to support it. Code section 6363. The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and if there is any evidence to support the verdict, it cannot be set aside unless the opposing evidence is so strong that it can be said that the ver-

dict is *plainly* contrary to the evidence. Unless the opposing evidence is of this weight, the plaintiff in error stands in this court as on a demurrer to the evidence. This court has nothing to do with the preponderance of the evidence.

[2] In the instant case, if we look at the evidence for the Commonwealth alone, it cannot be doubted that it amply supports the verdict. It is only after evidence for the accused is introduced that any doubt arises as to the guilt of the accused, and this doubt it was the province of the jury to solve. They have solved it adversely to the accused, and while we might not, if on the jury, have solved it in the same way, we are unable to say that the testimony in his favor is so strong that the verdict is plainly contrary to the evidence.

The only evidence offered for the Commonwealth was that of the prohibition officer, who testified as follows:

[3] "That he was, on the 2nd day of May, 1924, a prohibition officer of the State of Virginia, and that in searching for a still, he located one on the property of David Nuckols, in Hanover county, Virginia; that he approached without being discovered to within about twenty-five yards of the still, where he remained hidden from view and watched the operations of the still for about fifteen minutes; that he saw Coleman Wickham, a white man, stirring the mash in the still, and Roe Nuckols, another white man, doing some other work about the still; that the still was located in the bottom of a deep ravine or gully, on the edge of the creek, in a very inaccessible position and one that was well hidden from the view of any passer-by; that William J. Johnson, a colored man, was standing on the top of the bank of the ravine or gully, overlooking the still and not far from it; that during the time he, Vaughan, watched them, about fifteen minutes, Johnson con-

tinued to stand there, talking to the above mentioned Coleman Wickham, and looking sharply about the surrounding country from time to time, first to the right and then to the left, as if he were on the lookout. (Here the witness illustrated his testimony before the jury by leaning forward and looking quickly from side to side, as if peering into the distance.) That at one time the above mentioned Coleman Wickham pointed to an opening in the woods, and Johnson immediately looked in that direction; that after watching for the time above mentioned, he raided the still, whereupon Johnson ran and made his escape, and he, Vaughan, arrested the other two men right then, and Johnson was apprehended a day or two later; that the still was a seventy-five gallon copper still, and in full operation, with the fire burning, the whiskey running out, etc., etc.; that near the still was six and one-half gallons of corn whiskey, three fermenters, and one hundred and fifty gallons of mash, which was then ready to be run through the still; that he and William J. Johnson had lived in the same neighborhood in Hanover county ever since he could remember; that he was well acquainted with Johnson's general reputation as a violator of the prohibition law in the neighborhood in which he lived; and that such reputation was bad."

On behalf of the accused, the three white men who were jointly indicted with him testified that Johnson had no interest in and was not working at or about the still and was not acting as watchman. Johnson himself testified:

"That he is a married man and owns his farm, which adjoins the property of David Nuckols, and that on the morning of the raid he was on his place near Nuckols' line looking at his plant bed, when he heard a noise on Nuckols' place, whereupon he went on Nuckols' land

and went in the direction of the noise.   When he had gone some distance he saw smoke rising and for curiosity investigated and discovered the still with Wickham and Nuckols working there.   That he knew both of them and went up to the still and stood there conversing with them.   That Wickham asked him if he wished to have a drink and he said yes, and thereupon took a drink of liquor.   That while he was standing at the still talking to Wickham, Mr. Vaughan raided the still and he ran because he knew that he did not have any business there.   He further testified that he was not employed at the still and did not know the still was located on Nuckols' place until that morning."

This was all of the testimony given in the case.

Section 20 of the prohibition act (Acts 1924, page 593, 598) declares:   "All persons found at a distillery where ardent spirits are being manufactured shall be deemed *prima facie* guilty of manufacturing the same, or aiding and abetting in such manufacture, and upon conviction thereof shall be subject to the same penalties as if personally manufacturing the same."

In view of this section, and the testimony for the Commonwealth, as to the position of the accused, and that he was looking *sharply* about the surrounding country from time to time, first to the right and then to the left as if he were on the lookout, the flight of the accused and his bad reputation as a violator of the prohibition law, we are unable to say that the verdict of the jury was *plainly wrong.*

The judgment of the trial court will be affirmed.

*Affirmed.*