**Salem**

ALTON JUNIOR MORAN

v.

COMMONWEALTH OF VIRGINIA

No. 0244-86

Decided June 16, 1987

---

COUNSEL

William G. Davis (Davis, Davis, Davis, Davis & Ruff, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — Alton Junior Moran was convicted of unlawfully and feloniously manufacturing alcoholic beverages without a license in violation of Code § 4-57 and was sentenced by a jury to six months in jail and fined $1,000.[1] On appeal, he contends that the evidence proffered at trial was insufficient to support the conviction. We agree and reverse the conviction.

The evidence at trial consisted entirely of the testimony of J. E. Beheler, an agent of the Alcoholic Beverage Control Commission. Beheler testified that at 6:30 a.m. on July 7, 1985, he and another agent were returning to Martinsville after investigating an illegal distillery. As they passed through the intersection of Routes 646 and 890 in Franklin County, Beheler observed Moran, whom he

---

[1] Code § 4-57 provides in part:
(a) [I]f any person shall manufacture in this State alcoholic beverages without being licensed under the provisions of this chapter to manufacture such alcoholic beverages . . . he shall be guilty of a felony.
(b) Every person found at any distillery, winery or brewery where alcoholic beverages are being manufactured in violation of the provisions of this chapter shall be deemed, upon due proof of such violation, guilty of manufacturing the same or aiding and abetting in such manufacture and upon conviction thereof shall be punished as if personally manufacturing the same.

had known for three years, operating a brown Ford van. Beheler noted that Moran was wearing a "light-colored printed or striped shirt" and that his passenger was wearing a camouflage t-shirt. When Moran drove through the intersection, Beheler turned his vehicle and followed.

After proceeding approximately three miles on Routes 646 and 651, the Ford van turned left onto a dirt road going into a farm area. Beheler then exited his vehicle and followed on foot. The van continued down the dirt road, past a small frame house situated approximately 400 yards from Route 651, and disappeared over a knoll, at which time Beheler lost sight of it. Beheler entered and searched a nearby wooded area. Approximately forty minutes after he left his vehicle, Beheler heard what he thought to be a water pump and gas propane burners. He testified that he "commonly associate[s] [these sounds] with distilleries;" however, he was not certain of the precise location of the still because it was obscured by woods. Beheler notified the agent who remained in his vehicle that there was a still in the area. Beheler then proceeded to a corn field on a knoll above a wooded area because he suspected the still was located in that wooded area. For several hours, while the other agent went to Martinsville to get help to execute a raid, Beheler remained in the field of tall corn but could not see a still from his location.

Thirty minutes to an hour prior to the arrival of the other agents, Beheler "couldn't hear the pump anymore and . . . didn't hear the burners." When the other officers arrived, they surrounded the area where they believed the still was located but did not observe any activity. Beheler then spotted the still and the brown Ford van parked at the still site. After observing the site for forty-five minutes, the agents moved into the still site at 2 p.m. and inventoried the area. They found hanging on a propane tank a shirt which Beheler stated was "very similar to the one [Moran] was wearing." The brown Ford van was parked six feet from the still, and it contained nineteen empty propane tanks and forty empty sugar bags in the rear compartment. The agents also confiscated twelve eight hundred gallon stills, thirty gallons of untaxed whiskey, ninety-six hundred gallons of "mash" in various stages of fermentation, and assorted paraphernalia utilized in the distilling process. Additionally, a certificate of registration for the van was obtained indicating that it belonged to Moran. None of

the agents saw or arrested anyone at the still site. The agents also did not go to the house on the dirt road near the still and did not ascertain who lived in the house.

Moran was arrested on July 8, 1985 at his place of employment. When questioned about the van, he stated that he sold the van on July 4 to a man named Hughes and was allowing the purchaser to use the van with his tags. Moran was charged and tried for the unlawful manufacture of alcoholic beverages. A jury found him guilty of the offense charged.

In order to support the conviction on the facts of this case the Commonwealth concedes that it was necessary to prove that alcoholic beverages were being manufactured at the distillery site without a license and that Moran was present at the distillery site. Failure to prove either allegation bars the Commonwealth from availing itself of the statutory presumption contained in Code § 4-57(b). *See Lyons v. Commonwealth,* 204 Va. 375, 378, 131 S.E.2d 407, 409 (1963). For purposes of this appeal, we will assume that alcoholic beverages were being manufactured at the site; however, we conclude that the evidence did not establish beyond a reasonable doubt that Moran was present at the distillery site.

Beheler, the only witness at trial, testified that at no time was Moran seen at the still; thus, in order to establish that Moran was "found" at the still, the prosecution had to rely entirely upon circumstantial evidence. The Commonwealth argues that the evidence established that: (1) Moran was seen driving the van; (2) Beheler followed the van and saw it go down the road toward the still; (3) no one was seen entering or leaving the only road to the still; (4) the van which was registered to Moran was found at the still; and (5) a shirt similar to the one Moran was seen wearing was found at the still. The Commonwealth asserts that these facts give rise to a "reasonable conclusion . . . that the defendant had been at the distillery . . . and had recently left the site just prior to the raid." A "reasonable conclusion" as to Moran's presence, however, is not sufficient to sustain a conviction under the statute.

In reversing a conviction under a substantially similar predecessor of Code § 4-57, our Supreme Court stated:

> [T]here is no stronger presumption afforded than that an accused is presumed to be innocent, which cannot be overthrown except by proof of his guilt beyond a reasonable doubt.

*Dotson v. Commonwealth*, 171 Va. 514, 517, 199 S.E. 471, 473 (1938). " 'Where inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion would be inconsistent therewith.' " *Id.* at 518, 199 S.E. at 473 (quoting *Willson v. Commonwealth*, 160 Va. 913, 917, 168 S.E. 344, 345 (1933)). Inferences may be taken from proved circumstances only to the extent those inferences are reasonable and justified. *Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). Furthermore, where the Commonwealth's evidence as to an element of an offense is wholly circumstantial, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976), *cert. denied*, 474 U.S. 833 (1985). The facts here do not provide a basis sufficient to sustain the conviction under these principles.

Moran was never seen at the still site. Agent Beheler did not see Moran again, after initially spotting him in his vehicle on the public road, until Moran was arrested the day after the raid. The Commonwealth asserts, however, that his presence at the still was established from several circumstances, including the fact that a shirt "very similar to the one [Moran] was wearing" was found at the still site. However, the "light colored print shirt" found at the still was never identified with sufficient certainty to establish that it was the "light colored print or striped shirt" that Moran wore when he was seen by Beheler six hours earlier. This uncertainty as to the identity of the shirt renders its probative value minimal at best.

The Commonwealth also places great reliance on the discovery at the still site of the brown Ford van, which Moran was observed operating and which was registered in his name. We do not, however, perceive this as supporting a reasonable inference that Moran was ever at the site. When Beheler initially observed Moran in the vehicle, there was another individual with Moran. Additionally, Beheler lost sight of the vehicle for at least six hours after it

disappeared over a knoll while travelling on the dirt road. The small frame house, which the agents never approached, was adjacent to the dirt road. The still was located about half a mile down the dirt road in a wooded area. These facts do not exclude the hypothesis that Moran left the vehicle prior to the time it arrived at the still.

The Commonwealth also urges that the evidence necessarily proves Moran was at the site and fled prior to the raid because there was no means of egress from the area other than the road on which the van initially traveled into the area and because Beheler did not observe anyone leave on that road. This argument is unpersuasive because Beheler testified that he could not see the road at all times during his surveillance of the area. Moreover, the argument assumes that if Moran was in the van and left on foot by any route other than the dirt roadway he was doing so in order to flee undetected from the scene of a crime. The assumption is purely speculative. The trier of fact would have first had to assume the very issue to be proved - Moran's presence at the still.

■ Our Supreme Court's decision in *Johnson v. Commonwealth*, 142 Va. 639, 128 S.E. 456 (1925), does not suggest that Moran's conviction must be sustained. In *Johnson*, the defendant's conviction under a predecessor of § 4-57 was upheld although he was apprehended the day after the raid at a location removed from the still site. However, at the time the still was raided, Johnson was observed on an embankment overlooking the site acting as a lookout and conversing with an individual stirring the mash. He subsequently fled when the area was raided. *Id.* at 641-42, 128 S.E. at 457. In contrast, Moran was never shown to have been in close proximity to the still or in any other way connected with it. *Cf. Brown v. Commonwealth*, 156 Va. 947, 157 S.E. 567 (1931) (accused "found" at still site when, at time of arrest, he was located 35-40 yards from the still carrying a pistol and quart jars); *Langford v. Commonwealth*, 154 Va. 879, 153 S.E. 821 (1930) (accused apprehended 20-25 yards from still and heading directly toward it after he whistled to signal his approach).

It is well settled in Virginia that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every rea-

sonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

*Cameron v. Commonwealth*, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970)(citations omitted). In this case, both the direct and circumstantial evidence were insufficient to sustain a determination beyond a reasonable doubt that Moran was present at the still. Thus, the facts do not warrant invoking the presumption of guilt embodied in Code § 4-57(b), and the evidence does not otherwise prove beyond a reasonable doubt that Moran was engaged in the manufacture of alcoholic beverages in violation of Code § 4-57. Accordingly, the conviction is reversed.

*Reversed.*

Koontz, C.J., and Coleman, J., concurred.