COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Overton
Argued at Richmond, Virginia


OLAOLU WILSON OYEJOLA
                                    MEMORANDUM OPINION[*] BY
v.  Record No. 1315-96-2         JUDGE JAMES W. BENTON, JR.
                                         JUNE 17, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                  Oliver A. Pollard, Jr., Judge

          Joseph A. Sadighian, Assistant Public
          Defender, for appellant.

          Steven A. Witmer, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Olaolu Wilson Oyejola was convicted by a judge of credit

card fraud.  An appeal was granted on the issue raised by Oyejola

in his petition for appeal, to wit:  "whether the evidence was

sufficient to sustain a finding that [Oyejola] took the credit

card from the bank or the holder of the card without consent and

with the intent to use it."  Although Oyejola's counsel raised

other issues in his brief on appeal, we decide only the issue

raised in the petition, and we reverse the conviction.

                               I.

     Prior to trial, the indictment against Oyejola was amended

to state that he "did take, obtain, or withhold a credit card

from the person, possession, custody, or control of Central

--------------------

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Fidelity Bank, w[ith] the intent to use or sell it without the consent of Central Fidelity Bank, Va. Code Sec. 18.2–192." Oyejola's counsel did not object to the amendment. Oyejola pleaded not guilty and waived his right to a jury trial.

At trial, an investigator employed by the Central Fidelity Bank in Richmond testified that the bank received a credit card account application in the name of Karen T. Soliday at 22 East Filmore Street, Petersburg. The investigator sought to verify information on the application because the bank had received three credit card applications requesting that the cards be sent to 22 East Filmore Street, and the similarities in the handwriting suggested to him that the applications may be fraudulent. The investigator also stated that he had difficulty verifying the information on the applications. In particular, he called the employer listed on Soliday's application and was told that the employer had no employee by that name. The investigator contacted the Petersburg Police Department.

After contacting the police, the investigator had a credit card made and put the card into a mailer containing the name "Karen T. Soliday" and addressed to 22 East Filmore Street. Tucker put the card and mailer into an envelope and gave it to a Petersburg police officer.

The police officer arranged to have the postal service deliver the envelope while the police conducted a surveillance at the address. A police officer testified that he observed Oyejola

at that residence prior to the delivery. The officer also testified that because the envelope did not have an apartment number on it, the envelope was placed on top of the mailboxes at the apartment building and not inside a particular mailbox.

The officer observed a man leave the building, approach the mailboxes, and take the envelope. The officer did not see the face of the man. The man then returned to the apartment building. About thirty minutes later, the officer observed Oyejola leave the building. The officers in the surveillance team followed Oyejola while he was driving. They stopped his vehicle after a few minutes.

A police officer asked Oyejola to exit the vehicle and obtained Oyejola's consent to search. The officer removed the torn envelope from the bank. He then arrested Oyejola. In the ensuing search, the officer found in Oyejola's wallet the credit card issued to Karen Soliday. The officer also found several business cards containing in handwriting various names, addresses, telephone numbers, and Social Security numbers.

After Oyejola received his Miranda rights and signed a waiver form, Oyejola told the officers that he planned to use the credit card to pay his rent. Later, Oyejola wrote the following statement:

> I have been questioned about a credit card
> from Central Fidelity Bank, Account #
> 4060-6143-5023-3034, in the name of Karen T.
> Soliday.
>     On 09/21/95, I took this credit card out
> of the envelope when the card was delivered
> to 22 E. Fillimore Street, Petersburg, VA;

> which is also the address where I live. I
> live in Apt-B and the mail is delivered to
> several mailboxes outside the front of the
> building.
> After opening the envelope, I put the
> credit card inside my wallet. I have been
> shown a copy of a credit card application in
> the name of Karen T. Soliday and I did not
> fill out this application, and I do not know
> who did complete this application.

Oyejola also told the officers "that he was going to use the card to go to the ATM machine."

A United States Secret Service agent testified that Oyejola said he had applied for credit cards in other names. None was the name Karen Soliday.

At the close of the Commonwealth's case, the trial judge informed the prosecutor that although the indictment charged that Oyejola took the card from the bank, the evidence showed that the card was issued in the name of an individual. The judge suggested that the prosecutor amend the indictment to charge Oyejola with "'withholding the card from the bank or Karen Soliday.'" The prosecutor asserted that the card belonged to the bank at the time and "never was in the custody of Karen Soliday." Nevertheless, the prosecutor stated that she "would like to" amend the indictment. Oyejola's counsel did not object to this second amendment.

The prosecutor then re-opened the Commonwealth's case and recalled the bank's investigator. The investigator testified that "[t]he card always belongs to the issuing bank" even though it is issued for the use of the person whose name appears on the

card.  He also stated that the fact that the card is owned by the bank is stated in the truth and lending statement.  However, he did not recall placing a truth and lending statement in the envelope sent to Filmore Street.  Oyejola's counsel made a motion to strike and argued as follows:

> [T]he indictment as stated claims that the card was taken or withheld from the person's possession, custody, or control of Central Fidelity Bank; however, Investigator Tucker cannot present any authority upon which this statement is based or the card always belonging to the issuing bank.
>
> There's no evidence of a truth and lending statement having been included in this controlled delivery.
>
> I further move to strike to the sufficiency of the evidence.  The card was delivered to 22 East Filmore Street.  There's no evidence that Karen Soliday did not live there.  Again, at most, Mr. Oyejola would have withheld the card from Ms. Soliday herself.
>
> There's no evidence that he actually picked up the envelope in the mail slot.  Someone did.  He was found with it on his person later on.  For those reasons we would ask the Court to strike the case against Mr. Oyejola.

The judge overruled the motion.  Oyejola did not offer evidence on his own behalf.  Oyejola's counsel renewed his motion to strike and argued, in pertinent part, as follows:

> [W]e would argue the same things that we argued on the motion to strike.  The indictment itself indicates that the credit card was withheld from Central Fidelity Bank; however, it was issued to Karen Soliday.  There was no authority that the bank itself owns the card.  There's no evidence that Karen Soliday didn't live at that address or

perhaps received the credit card herself and
handed it to Mr. Oyejola.

The trial judge convicted Oyejola, finding that he "[t]ook the card . . . with the intent to use it for his own benefit without the consent of the bank or the holder of the card."

II.

In pertinent part, Code § 18.2-192 provides as follows:
A person is guilty of credit card or credit card number theft when:

(a) He takes, obtains or withholds a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, obtained or withheld, receives the credit card or credit card number with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder; or

(b) He receives a credit card or credit card number that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and who retains possession with intent to use, to sell or to transfer the credit card or credit card number to a person other than the issuer or the cardholder . . . .

The indictment charged that Oyejola "did take, obtain, or withhold a credit card from the person, possession, custody, or control of . . . [the] Bank . . . without the consent of . . . [the] Bank."[1]  From the wording of the indictment, it appears

---

[1]We note that although Oyejola failed to raise the issue in this appeal, the indictment charging Oyejola with a violation of Code § 18.2-192 was invalid.  The bank was not the cardholder; the bank was the issuer of the card.  See Code § 18.2-192(a). The cardholder is "the person . . . named on the face of [the] credit card to whom or for whose benefit the credit card is

- 6 -

that the Commonwealth sought to prosecute Oyejola for a violation

of Code § 18.2-192(a).  The Commonwealth does not suggest any

other possibility.

issued by an issuer."  Code § 18.2-192.  Thus, a charge that
Oyejola withheld the card from the bank was not a valid charge
under Code § 18.2-192(a).

Indeed, following the presentation of its evidence, the
trial judge suggested that the indictment be amended.  The
following colloquy ensued:

> THE COURT:  Let me ask you something before
> you close your case.  The charge is that he
> took and withheld a credit card from the
> bank.
>
> [PROSECUTOR]:  Yes, Your Honor.
>
> THE COURT:  The card was in the name of an
> individual.
>
> [PROSECUTOR]:  That's correct, Your Honor.
> Although the individual --
>
> THE COURT:  The only thing you would have
> would be circumstantial if you were prepared
> to go forward on that.  What I'm asking the
> State is it would be advised amending the
> indictment to include "withholding the card
> from the bank or Karen Soliday."
>
> *     *     *     *     *     *     *
>
> THE COURT:  All right.  Is the State not
> going to amend the indictment to correspond
> with the facts?  I think the Court had the
> right to accept the amendment.
>
> [PROSECUTOR]:  Yes, sir.  I would like to do
> that as well.

The record contains no evidence beyond this colloquy that the
indictment was amended.  Furthermore, even assuming that the
amendment was effective, the amendment as stated by the trial
judge still failed to allege that the conduct occurred "without
the cardholder's consent."  Code § 18.2-192.

- 7 -

We agree with Oyejola and hold that the evidence was insufficient to sustain a conviction for violating Code § 18.2-192(a).  No evidence proved that Oyejola's conduct occurred "without the cardholder's consent."  Id.  The Commonwealth failed to prove whether Karen Soliday, the cardholder, is an actual person.  Even assuming Karen Soliday is a person, the Commonwealth failed to prove that she withheld consent for Oyejola to possess her credit card.

"[W]here the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)).  The Commonwealth failed to exclude the reasonable hypothesis that Karen Soliday gave Oyejola permission to retrieve the credit card from the mailbox.  At most, this evidence creates merely a suspicion of guilt.  However, suspicion, alone, is not enough to sustain a conviction.  See Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981) ("Suspicion . . . no matter how strong, is insufficient to sustain a criminal conviction."); see also Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986).

Accordingly, we reverse the conviction and dismiss the indictment.

<u>Reversed and dismissed</u>.