COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman,
          Willis, Elder, Bray, Annunziata, Bumgardner, Lemons and
          Senior Judge Overton*
Argued at Richmond, Virginia


SHURON MAURICE BARKSDALE
                                   MEMORANDUM OPINION** BY
v.        Record No. 1106-97-2     JUDGE LARRY G. ELDER
                                       FEBRUARY 23, 1999
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
William L. Wellons, Judge

          Nora J. Miller (Watson & Nelson, P.C., on
          brief), for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


    Shuron Maurice Barksdale (appellant) appealed from his bench

trial conviction for possession of cocaine pursuant to Code

§ 18.2-250.[1]  On appeal, he contended the evidence was

---

        *Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

        **Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

        [1]Appellant originally was indicted for possession with
intent to distribute in violation of Code § 18.2-248.  The order
of conviction of March 4, 1997 recites that the court "[found]
the accused guilty of possession of cocaine, Virginia Code
Section 18.2-248."  However, Code § 18.2-248 proscribes the
offense of possessing cocaine with the intent to distribute,
whereas Code § 18.2-250 proscribes simple possession.  The
sentencing order of April 15, 1997 does not make clear the
offense for which appellant was convicted.  It mentions only the

insufficient to prove that he possessed the cocaine the arresting officers found on the ground after his arrest. He argued that the evidence failed to exclude the reasonable hypothesis that the cocaine the officers found at the location of his arrest had been dropped or placed there by someone else. In an unpublished decision, a divided panel of this Court agreed with appellant and reversed his conviction. See Barksdale v. Commonwealth, No. 1106-97-2 (Va. Ct. App. July 28, 1998). We granted a rehearing en banc and, based on a ruling of the majority of the full court that the circumstantial evidence was sufficient to prove appellant actually possessed the cocaine, we affirm appellant's conviction.

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its own judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236,

_____

offense for which appellant was indicted--possession with intent to distribute in violation of Code § 18.2-248--and imposes a sentence which would be appropriate for either offense. The trial transcript makes clear that the trial court convicted appellant under Code § 18.2-250, for it "[found] that the evidence does show beyond a reasonable doubt [appellant's] guilt of a lesser included offense of possession of cocaine." Therefore, we remand the matter to the trial court for the sole purpose of correcting the clerical errors in the trial court's conviction and sentencing orders. See Tatum v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 138 (1994).

239, 415 S.E.2d 218, 220 (1992).  The trial court's judgment will not be set aside unless it appears that the judgment is plainly wrong or without supporting evidence.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  "[W]here the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (citation omitted). However, the Commonwealth "'is not required to disprove every remote possibility of innocence, but is instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'"  Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (citation omitted).  "The hypotheses which the prosecution must exclude are those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'"  Id. at 289-90, 373 S.E.2d at 338-39 (citation omitted).

"To convict a defendant of illegal possession of drugs, the Commonwealth must prove that the defendant was aware of the presence and character of the drugs, and that he intentionally

and consciously possessed them." Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (citation omitted). "Physical possession giving the defendant 'immediate and exclusive control' is sufficient." Gillis v. Commonwealth, 215 Va. 298, 301-02, 208 S.E.2d 768, 771 (1974). However, mere proximity to a controlled substance, standing alone, is not sufficient to establish possession. See Wright v. Commonwealth, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977).

We hold that the evidence was sufficient to prove that appellant actually possessed the cocaine found by the officers after his arrest. The evidence of appellant's conduct proved that, at the time of his arrest, he was concealing something in his right hand that he did not want the officers to see. Trooper Wilborn testified that, as appellant fled from him, appellant ran with his right hand partially inside his pants. Nothing in the record indicates that appellant's pants were either falling down or even loose-fitting. Appellant made no throwing motion while he was running from Trooper Wilborn. After the trooper had placed appellant on the ground, appellant resisted the trooper's efforts to handcuff his right hand behind his back. The trooper succeeded in moving appellant's right hand behind his back only after ordering him several times and using force. This evidence indicates that appellant was holding an object in his right hand during this time. The fact that appellant's attempt to conceal his right hand was made in the context of fleeing from the police tends to show his awareness that the object in his hand was

- 4 -

incriminating.  See Jones v. Commonwealth, 208 Va. 370, 374, 157 S.E.2d 907, 910 (1967) (stating that "evidence of flight to avoid arrest is admissible as tending to show consciousness of guilt on the part of the accused").

The circumstantial evidence regarding the location of the cocaine found by the officers, the manner in which it was packaged, and the nature of the surrounding area established to the exclusion of all reasonable hypotheses of innocence that the object appellant was attempting to conceal in his right hand was the cocaine subsequently found by the officers.  The cocaine was found "exactly where [appellant] had been [lying] down" when he was handcuffed.  Trooper Wilborn testified the cocaine was located in a twenty-dollar bill that was crumpled up into a ball as if it had been held in someone's hand.  Appellant was arrested on the grounds of a church at an area known as "Bethal."  Bethal was located at the intersection of Routes 40 and 617.  Although this intersection was "fairly well traveled," only two buildings were located there--a church and a store.  Nothing in the record indicated that Bethal was characterized by even moderate foot traffic or that it was either a high crime area or an open air drug market.  The cocaine was found far away from either road--at least fifty yards from Route 40 and thirty yards from Route 617--reducing the possibility that it had been discarded from a passing vehicle.  In addition, both the cocaine and the twenty-dollar bill in which it was wrapped are objects "'of significant value,'" making it unlikely that they were either

intentionally or carelessly discarded on the grounds of the church by someone else prior to appellant's arrest. Powell v. Commonwealth, 27 Va. App. 173, 178, 497 S.E.2d 899, 901 (1998) (quoting Collins v. Commonwealth, 13 Va. App. 177, 180, 409 S.E.2d 175, 176 (1991)). These circumstances support the conclusion that appellant was holding the twenty-dollar bill containing the cocaine in his right hand prior to the time Trooper Wilborn handcuffed him and that the balled-up bill left appellant's hand as he was lying on the ground. The evidence regarding the church's isolated location and the lack of any evidence indicating the presence of other persons in the area excludes as a reasonable hypothesis the possibility that someone else left the cocaine at the spot where Trooper Wilborn placed appellant on the ground.

This case is distinguishable from Gordon v. Commonwealth, 212 Va. 298, 301, 183 S.E.2d 735, 737 (1971), because the nature of the break in the chain of circumstances that occurred in Gordon is not present here. In Gordon, the defendant was seen carrying an envelope while fleeing from the police on foot in the City of Richmond. See id. at 299, 183 S.E.2d at 736. The officer chasing the defendant briefly lost sight of him twice during his pursuit. See id. When the defendant was arrested, no envelope was in his possession. See id. A short while later, a detective found an envelope containing "narcotics works," on some grass adjacent to a "fairly busy" street that was along the defendant's escape route. See id. at 299-300, 183 S.E.2d at 736.

- 6 -

This envelope was similar in appearance to the one initially carried by the defendant.  See id. at 300, 183 S.E.2d at 736. The Virginia Supreme Court held that the circumstantial evidence was insufficient to prove that the envelope found by the detective had been in the defendant's possession.  See id. at 300, 183 S.E.2d at 737.  The Court reasoned that the chain of circumstantial evidence linking the defendant to the envelope found by the detective was "fatally" broken because "no witness was produced who saw [the defendant] dispose of the . . . envelope" he had been carrying and the envelope found by the detective was located next to a "public street on which numerous persons were gathered."  See id. at 300-01, 183 S.E.2d at 737.

Unlike in Gordon, the cocaine was not found at a point along appellant's escape route or at a point to which other persons had access during the relevant time period.  Appellant's conduct indicates that he was in possession of an object he was attempting to conceal at the exact location where the cocaine was eventually found.  Because appellant made no throwing motion while he was fleeing from Trooper Wilborn and because appellant resisted allowing his right hand to be placed behind his back during his arrest, the hypothesis that appellant discarded the object in his hand at some unknown point along his escape route does not flow from the evidence.  Moreover, unlike in Gordon, the cocaine was not found near a city street "on which numerous persons were gathered."  Id. at 301, 183 S.E.2d at 737.  The church was only one of two buildings located at a rural, fairly

isolated intersection.  No more than ten minutes passed from the time appellant was removed from the scene of his arrest to the time the officers returned with a flashlight to search the area. No evidence indicated that any other pedestrians or drivers were on the grounds of the church or even in the Bethel area during the time the location of appellant's arrest was unattended.

For the foregoing reasons, we hold that the evidence was sufficient to support appellant's conviction for possession of cocaine, and we affirm the conviction.  However, due to the clerical error in the conviction and sentencing orders regarding the offense for which appellant was convicted, see supra footnote 1, we remand this matter to the trial court for the sole purpose of amending the conviction and sentencing orders to reflect that appellant was convicted under Code § 18.2-250 rather than Code § 18.2-248.

Affirmed on the merits and remanded with instructions.

Benton, J., with whom Fitzpatrick, C.J., joins, dissenting.

To support a conviction based upon constructive possession of drugs, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to [the accused's] dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). Furthermore, the principle is well established in Virginia that whenever "a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). Applying these principles, the Supreme Court has ruled that "circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty . . . [because the] actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain . . . [a] conviction." Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977).

The evidence proved that Shuron Maurice Barksdale initially encountered the officers at a roadblock where they were checking driving documents. When a deputy sheriff asked for Barksdale's driver's license and registration, Barksdale said he was eighteen

years old and did not have a driver's license.  Seeing beer in the automobile, the deputy told Barksdale to drive to the roadside where another officer was giving "sobriety" tests.  At that time, the deputy had not learned Barksdale's name.  Barksdale disregarded the deputy's instructions, accelerated his automobile, and drove away.

The deputy and the officer who had been giving "sobriety" tests followed Barksdale.  At the intersection of two highways, Barksdale abandoned the automobile and ran.  The officer chased Barksdale on foot from a grocery store to a church yard, across the highway.  The officer testified that Barksdale kept his right hand inside his pants while he was running.  However, the evidence does not prove whether the teenager was holding up his pants or engaging in some other activity.  The officer did not see any item in Barksdale's hands and also testified that Barksdale made no throwing motions.

The officer caught Barksdale in the church yard and put Barksdale on the ground with his face down.  A utility light illuminated the parking lot "but [it was] . . . kind of hard to see" in the grassy area beside the church's parking lot where Barksdale was stopped.  After the officer put handcuffs on Barksdale, using force to get Barksdale's right wrist behind him, he searched Barksdale and waited for the deputy to arrive.  The search revealed no items on Barksdale.  The deputy testified that when he arrived at the place where the officer had detained Barksdale, Barksdale was "laying on the ground . . . pretty close

to the sidewalk but not far from the bush which is at the corner of the church."

Both the deputy and the officer took Barksdale to a police vehicle. The deputy and the officer then obtained a flashlight and returned ten minutes later to search the area where Barksdale was apprehended. The officer said the deputy found "a piece of paper that was balled up in a knot" at the place where Barksdale was in the grass. The deputy who found the item testified that he saw a folded piece of paper "on the edge of the parking lot." The deputy recalled that the folded paper was "not crumbled in a ball" but he could not recall if the folded paper was in the grass. When the officers examined the paper, they discovered it was a twenty-dollar bill with a white residue, which was later determined to be cocaine.

No evidence proved that Barksdale actually possessed the twenty-dollar bill containing cocaine residue. The Commonwealth's suggestion that Barksdale had something in his hand during the chase is purely speculative. No evidence proved Barksdale ever had anything in his hand. The officer who chased and captured Barksdale testified that he did not see any item in Barksdale's hand. The deputy first saw the money in the grass when he returned to the area to search it. It is well established that "[s]uspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction." Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986). Likewise, the "mere opportunity to commit an offense

raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)). "To justify conviction of a crime, it is insufficient to create a suspicion or probability of guilt." Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997).

The lack of evidence proving that Barksdale possessed any item in his hand is a "fatal gap in the circumstantial evidence," Gordon v. Commonwealth, 212 Va. 298, 301, 183 S.E.2d 735, 737 (1971), and manifestly establishes that the evidence in this case was insufficient to prove beyond a reasonable doubt that Barksdale ever possessed the money containing cocaine residue. The facts in Gordon established that a police officer saw Gordon retrieve "a brownish color, manila color envelope" from between bushes and a concrete fence. Id. at 299, 183 S.E.2d at 736. After Gordon began to run, the officer chased him and saw that he was still carrying the envelope. During the chase, Gordon discarded the envelope. While the officer was capturing and arresting Gordon, another officer found an envelope containing heroin on the route of the chase. The arresting officer testified that the envelope "was the 'same color, size and shape' as the envelope which he had seen Gordon pick up [and hold]." Id. at 300, 183 S.E.2d at 736. Although the arresting officer saw Gordon retrieve and run with an envelope that was identical

to the envelope that contained the drugs, the Supreme Court held that the trier of fact impermissibly drew an inference that Gordon had possessed the envelope that was recovered. Id.

The majority believes Gordon does not require a reversal of Barksdale's conviction because the cocaine was not found at a point along Barksdale's escape route or at a place where other persons had access during the "relevant time period." I disagree. The majority assumes as fact that Barksdale was carrying something in his hand. However, the assumption that Barksdale had something in his hand is based on pure speculation and conjecture. It is not a fact proved beyond a reasonable doubt. As was the case in Gordon, "the fatal gap in the circumstantial evidence" exists precisely because the Commonwealth failed to prove Barksdale ever possessed the incriminating item. Absent proof that Barksdale possessed the twenty-dollar bill, the evidence establishes only that the bill with the cocaine was found at a point along Barksdale's escape route.

The suggestion that the "relevant time period" is limited to the moment Barksdale was arrested restricts the "relevant time period" to exclude consideration of the circumstances surrounding Barksdale's arrest and ignores evidence that is both in the record and inconsistent with guilt. The unchallenged testimony proved that the twenty-dollar bill was found near a bush adjacent to a parking lot. The parking lot was at a "fairly well travelled" intersection, directly across the road from a grocery

- 13 -

store.  The evidence does not exclude the reasonable inference that the twenty-dollar bill was ejected either intentionally or accidentally by someone using the parking lot.  By ignoring the clear evidence that others had access to the grounds and parking lot where the arrest occurred, the majority impermissibly relieves the Commonwealth of its burden to "'exclude every reasonable hypothesis of innocence.'"  Garland, 225 Va. at 184, 300 S.E.2d at 784.

The relevant difference between Gordon and this case is immediately apparent and redounds in favor of reversing this conviction.  In Gordon, the accused was seen holding a package identical to the package that was found on his route of flight. Thus, the facts in Gordon, even though insufficient to prove possession, at least proved that Gordon had in his hand an item similar to the package containing drugs.  The hypothesis in this case of Barksdale's possession is purely speculative. Significantly, the Court in Gordon discussed favorably State v. Chavis, 154 S.E.2d 340 (N.C. 1967), where the evidence was insufficient to prove the accused possessed narcotics found on a hat in a vacant field of high grass where the accused walked. The officers "positively identified" the hat as one the accused had worn seconds earlier.  See Gordon, 212 Va. at 301, 183 S.E.2d at 737.  If those facts provided an insufficient foundation to prove possession, certainly the majority's assumption that Barksdale possessed the twenty-dollar bill even though the officer testified that he saw nothing in Barksdale's hand, is not

only unreasonable, it is based on pure speculation. See also Craig v. Commonwealth, 215 Va. 260, 262, 208 S.E.2d 744, 746 (1974) (holding that an officer's suspicion that a bag of marijuana was thrown from a truck when the truck stopped at the bag's location was "not sufficient to . . . exclude all reasonable conclusions inconsistent with . . . guilt").

In support of its hypothesis that Barksdale must have possessed the cocaine, the Commonwealth emphasizes Barksdale's flight. The explanation for Barksdale's flight, however, is just as likely found in the genesis of his initial contact with the police. Barksdale had been stopped at a roadblock; he had no license; he was a minor in possession of beer; and he had been directed to a place where an officer would check his sobriety. Furthermore, the deputy who stopped Barksdale at the roadblock did not have his name. Barksdale's flight is equally explained as an attempt to avoid the consequences of driving without a license and while intoxicated. Evidence that is equally susceptible to two interpretations, one of which is consistent with the accused's innocence of the charged offense, cannot be arbitrarily used to support the interpretation that incriminates the accused of the charged offense. See Harrell v. Commonwealth, 11 Va. App. 1, 11, 396 S.E.2d 680, 685 (1990).

The hypothesis that Barksdale did not possess the cocaine flows inexorably from the evidence. The twenty-dollar bill was found near a bush by a parking lot, directly across the road from a grocery store. The officer testified that the intersection

where the parking lot is located is "fairly well travelled." Although the majority notes that no evidence proved the area was "a high crime area," narcotics use in this country is not limited to "high crime area[s] or . . . open air drug market[s]." Sadly, it exists in all communities, rural and urban. Moreover, the testimony of the deputy, that the money was carefully folded, makes it as likely that the money was deliberately placed there for later retrieval, as the testimony, that the money was crumpled, makes it likely that it was inadvertently discarded as trash by someone using the parking lot. In short, only by conjecture can it be concluded that the twenty-dollar bill was not discarded by someone else either as trash or to be later retrieved. This was not a bundle or bag of cocaine; it was residue found on paper money discarded next to a parking lot.

For these reasons, I would hold that the evidence was insufficient to support the conviction. Thus, I would reverse the conviction and dismiss the indictment.