COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Agee
Argued at Alexandria, Virginia


ANABELIS CORRALES, S/K/A
 ANABLIS CORRALES
                                    MEMORANDUM OPINION* BY
v.    Record No. 2797-01-2           JUDGE G. STEVEN AGEE
                                       NOVEMBER 19, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                      John W. Scott, Jr., Judge

          John Franklin for appellant.

          Margaret W. Reed, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General; Marla
          Graff Decker, Senior Assistant Attorney
          General, on brief), for appellee.


     Anabelis Corrales, s/k/a Anablis Corrales ("Corrales") was

convicted in a jury trial in the City of Fredericksburg Circuit

Court of the second degree murder of her newborn baby and

sentenced to five years in prison.  On appeal, Corrales contends

the trial court erred in admitting the autopsy report into

evidence, allowing the Medical Examiner to testify as to the

ultimate facts in issue and granting the Commonwealth's jury

instruction as to the elements of first degree murder while

refusing her instruction.  She also challenges the sufficiency of

the evidence to sustain her conviction.  For the reasons that

follow, we affirm the trial court's decision.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

In the early morning hours of January 17, 2000, Corrales's sister, Rosa, found her passed out on the floor of Corrales's bedroom. Rosa noticed blood in the bed and on her sister's legs and called 911. When Emergency Medical Technicians (EMTs) arrived, they found Corrales awake but disoriented in her bed. One of the EMTs asked Corrales several times if she was pregnant, and she repeatedly responded that she was not.

The EMTs took Corrales to the hospital where she was met by a registered nurse who spoke fluent Spanish. Corrales gave a false name and again denied being, or having been, pregnant. An obstetrician, Dr. Tomzak, was called to the hospital and determined that Corrales had recently given birth to a "near term" baby.

Later that day Detective Doug Perkins of the Fredericksburg police met the local medical examiner at the Corraleses' residence. A baby was found in a double-tied plastic trash bag in the closet of Corrales's bedroom. After determining the baby was dead, it was transported to the state medical examiner's office for an autopsy.

Dr. Art Shores of the medical examiner's office performed the autopsy. Dr. Marcella Fierro, the Chief Medical Examiner for the Commonwealth of Virginia, testified at trial that she reviewed and "signed off on" Dr. Shores's report. Dr. Fierro testified at trial that the conclusion in the report and her conclusion were the same; the baby died from asphyxiation due to

smothering by plastic bag.  Dr. Fierro testified that the baby did not have an infection, acute traumatic injury, or blocked airways.  She also testified that the baby breathed and was alive before death.[1]

## ANALYSIS

### I.  Admission of the Autopsy Report

Corrales does not dispute that Code § 19.2-188 requires that autopsy reports by the Chief Medical Examiner's Office be received as evidence in any court proceeding.  Her claim on appeal is that while the autopsy report per se was admissible, it was error for the trial court to admit into evidence that portion of the autopsy report containing the medical examiner's conclusion regarding cause of death.  In short, Corrales avers the autopsy report should have been redacted to omit the cause of death section.  Corrales cites Ward v. Commonwealth, 216 Va. 177, 217 S.E.2d 810 (1975), to support her contention.

In Ward the Supreme Court of Virginia ruled that a statement as to the cause of death in the medical examiner's report was inadmissible because "[the] recorded statement was an expression of opinion and, standing alone, was incompetent to show the cause of [the decedent's] death."  Id. at 178, 217 S.E.2d at 811 (emphasis added).  In contrast to Ward, the conclusion as to the cause of death in this case did not "stand[] alone."

_____

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

- 3 -

The trial court properly admitted other evidence as to the cause of death – asphyxiation by plastic bag – through the testimony of Dr. Fierro as well as Detective Perkins, to which Corrales did not raise an objection. The "opinion" evidence contained in the autopsy report was cumulative of their unchallenged testimony.

Accordingly, we find no error in the admission of the autopsy report into evidence based on the facts in this case.

## II. Medical Examiner's Testimony

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see also Rule 5A:18. According to the record Corrales objected to the introduction of the autopsy report, specifically Dr. Shores's conclusion as to the cause of death, as hearsay and improper opinion testimony. However, the record does not reflect an objection to Dr. Fierro's testimony on the same issue. It has been "repeatedly and consistently held that a litigant must object to a ruling of the circuit court if that litigant desires to challenge the ruling upon appeal." Commonwealth v. Washington, 263 Va. 298, 304, 559 S.E.2d 636, 639 (2002); see also Waters v. Commonwealth, 39 Va. App. 72, 82-83, 569 S.E.2d 763, 767-68 (2002). Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Corrales has given no reason to invoke the "good cause" or "ends of justice" exception to Rule 5A:18, and we find none.

III. Jury Instructions

"'[Our] responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."'" Leal v. Commonwealth, 37 Va. App. 525, 532, 559 S.E.2d 874, 878 (2002) (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted)). "On appeal, although the Commonwealth prevailed at trial, when we consider the refusal of the trial court to give a proffered instruction, '"the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to the defendant."'" Leal, 37 Va. App. at 532, 559 S.E.2d at 878 (quoting Seegars v. Commonwealth, 18 Va. App. 641, 643, 445 S.E.2d 720, 722 (1994) (citations omitted)).

The trial court must inform the jury of the essential elements of the offense because an accurate statement of the law is essential to a fair trial. Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979). "An instruction should not be given which incorrectly states the applicable law or which would be confusing or misleading to the jury." Bruce v. Commonwealth, 9 Va. App. 298, 300, 387 S.E.2d 279, 280 (1990) (citing Cooper v. Commonwealth, 2 Va. App. 497, 345 S.E.2d 775 (1986)). Furthermore, "[i]t is not desirable to multiply instructions and is not error to refuse even a correct instruction on a point upon which the jury has already been fully

- 5 -

and correctly instructed."  Ambrose v. Commonwealth, 129 Va. 763, 766, 106 S.E. 348, 349 (1921).

Corrales alleges the trial court erred by refusing to give her proffered jury instruction while giving the Commonwealth's instruction on first degree murder.  The instruction given follows the model jury instructions for first degree murder.  Corrales's rejected instruction included two additional elements: that the child was born alive and that the child had an independent and separate existence apart from its mother.

In Lane v. Commonwealth, 219 Va. 509, 248 S.E.2d 781 (1978), the Supreme Court of Virginia adhered to the prevailing view of other jurisdictions that in a prosecution for killing a newly born baby "it is incumbent upon the State to prove that the child was born alive and had an independent and separate existence apart from its mother."[2]  Id. at 514, 248 S.E.2d at 783.  Finding the evidence insufficient to prove "that the child ever achieved an independent existence apart from its mother," the Supreme Court reversed the conviction.  Corrales argued to the trial court that Lane accordingly required her proffered instruction be given as it contained essential elements of the crime charged.

---

[2] Other states have also followed this rule.  See e.g. State v. Collington, 192 S.E.2d 856 (S.C. 1972); State v. Dickinson, 275 N.E.2d 599 (Ohio 1971); Montgomery v. State, 44 S.E.2d 242 (Ga. 1947); Jackson v. Commonwealth, 96 S.W.2d 1014 (Ky. 1936); Morgan v. State, 256 S.W. 433 (Tenn. 1923).

The Commonwealth argues that whether the baby was alive and had an independent existence is implied within the first element of the given model instruction: "that the defendant killed Baby Girl Corrales." Simply put, the Commonwealth's position is that the items Corrales proposes are, of necessity, subsumed in the model instruction and further delineation would only confuse the jury. We agree with the Commonwealth's position and find no error in the rejection of Corrales's proffered instruction.

Most of the evidence relevant to this point entered the record via Dr. Fierro's testimony. Dr. Fierro testified that the baby breathed after being born. She testified that she could find no other cause of the baby's death either from illness or complications during birth. On cross-examination she admitted that she could not rule out that the baby was dead before placement into the plastic bag.

Corrales made extensive argument on those points of evidence to the jury. Corrales was given, and took full advantage of, the opportunity during closing argument, to impress the Commonwealth's burden upon the jury, including arguing there must be a showing the child was born alive and had a separate and independent existence. The issue of whether Corrales "killed" the baby (and whether the baby was alive and had a separate and independent existence) was squarely before the jury. The additional items Corrales proferred were duplicative of the essence of the model instruction and could have well confused the jury.

Moreover, Lane does not hold that such separate instruction to the jury is required as Corrales requested. Lane dealt only with the sufficiency of the evidence and raised no issue as to a requirement for the particular jury instruction proffered. Therefore, we do not find Lane as authority for a mandated instruction beyond that of the model instruction which was what the trial court gave in this case.

We therefore find no error in the trial court's refusal to give Corrales's proffered jury instruction and in the giving of the Commonwealth's instruction.

## IV. Sufficiency of the Evidence

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its own judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). The trial court's judgment will not be set aside unless it appears that the judgment is plainly wrong or without supporting evidence. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Corrales argues on appeal that the evidence was insufficient to support the verdict. Specifically, Corrales argues that the Commonwealth failed to prove that: (1) the baby was born alive, (2) the baby had a separate and independent existence from the

- 8 -

mother, (3) she was the criminal agent, and (4) she acted with malice. We disagree.

On the issue of whether the baby was born alive the jury heard Dr. Fierro's testimony that the baby's lungs were filled with air and floated in water. This led her to conclude the baby had breathed on its own for at least a few minutes. She also told the jury that she could find no other causation such as disease or injury that would have caused the baby's death. The defendant's own expert admitted that the evidence was consistent with Dr. Fierro's opinion. From this testimony, the jury could conclude that the baby was born alive and had an existence separate and independent from the mother.

Corrales also asserts that the Commonwealth failed to present direct evidence that she was the criminal agent and that the only evidence was circumstantial. Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony. Williams v. Commonwealth, 259 Va. 377, 387, 527 S.E.2d 131, 137 (2000); Chichester v. Commonwealth, 248 Va. 311, 329, 448 S.E.2d 638, 650 (1994), cert. denied, 513 U.S. 1166 (1995). "[C]ircumstantial evidence alone is sufficient to sustain a conviction." Johnson v. Commonwealth, 2 Va. App. 598, 604-05, 347 S.E.2d 163, 167 (1986). However, "'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Tweed v. Commonwealth, 36 Va. App. 363, 370, 550 S.E.2d 345, 348-49 (2001) (quoting Moran

- 9 -

v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987)).

Having determined that Baby Corrales was born alive with no apparent medical problems, the jury could justifiably infer from the evidence that Corrales was the criminal agent of her death. The evidence showed that Corrales continuously denied having given birth, yet she was the only one who apparently knew of the baby's existence and its location in the bag in her bedroom closet.

Although the medical testimony was not conclusive, it was certainly sufficient to support a causal connection between Corrales's actions and the baby's death. See Cook v. Commonwealth, 219 Va. 769, 250 S.E.2d 361 (1979). There was clearly evidentiary support in the record for the jury's decision which cannot be said to be plainly wrong.

Corrales finally contends the Commonwealth failed to prove she acted with the requisite malice. "The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done 'willfully or purposefully.'" Vaughan v. Commonwealth, 7 Va. App. 665, 674, 376 S.E.2d 801, 806 (1989) (quoting Williamson v. Commonwealth, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942)). "Killing with malice but without premeditation and deliberation is murder in the second degree." Elliot v. Commonwealth, 30 Va. App. 430, 436, 517 S.E.2d 271, 274 (1999) (citing Perricllia v. Commonwealth, 229 Va. 85, 91, 326 S.E.2d 679, 683 (1985)).

Furthermore, the trier of fact is permitted to infer malice from the evidence.  Vaughan, 7 Va. App. at 674, 376 S.E.2d at 806.

The jury could infer malice through Corrales's actions after giving birth.  When determining whether her actions were done willfully or purposefully the jury could have considered Corrales's constant denials of being pregnant at the hospital, testimony from her friend that she wanted to cremate the body, and evidence that she faced eviction for having another baby. Inference of malice from this evidence was not error.

For the foregoing reasons, we find the evidence sufficient to support the jury's verdict.

CONCLUSION

Having found no error in the determinations of the trial court, the conviction is affirmed.

Affirmed.